THE STATE OF DELAWARE, Upon the Relation of HUGH R. SHARP, JR., J. DRAPER BROWN, JR., BENJAMIN F. SHAW, II, J. GORDON SMITH, WILLIAM P. RICHARDSON, FRANK R. GRIER and DALLAS D. CULVER, constituting the STATE HIGHWAY DEPARTMENT of the State of Delaware, Plaintiffs, v. 0.62033 ACRES OF LAND IN CHRISTIANA HUNDRED, NEW CASTLE COUNTY and STATE OF DELAWARE, HARVEY C. FENIMORE, ANNIE F. FENIMORE, his wife, JOHN ROBINSON FENIMORE, HELEN L. FENIMORE, his wife, THOMAS C. HAWKE, HILDA M. HAWKE, his wife, and UNKNOWN OWNERS, Defendants.

*(December* 7, 1954.)

HERRMANN, J., sitting.

*Donald W. Booker* for the plaintiffs.

*James R. Morford* and *George L. Sands* (of Morford and Bennethum) for the defendants.

Superior Court for New Castle County, No. 842, Civil Action, 1954.

HERRMANN, J.:

Under the power of eminent domain conferred in 17 *Del. C.* § 138,[1] the State Highway Department seeks to take certain real property owned by the defendants.

The proceeding was instituted under the condemnation procedural Statute, 10 *Del. C.* Ch. 61. The plaintiffs filed a complaint, made a deposit of estimated just compensation and filed a notice of intention to take possession of the property sought to be condemned. See 10 *Del. C.* §§ 6102, 6105 and 6110. Copies of the complaint, the certificate of deposit and the notice of intention were served upon the defendants simultaneously with the summons. See 10 *Del. C.* § 6106. The defendants filed answers to the complaint, pursuant to 10 *Del. C.* § 6107, asserting objections and defenses to the taking. Under the provisions of

---

[1] 17 *Del. C.* § 138 provides as follows:

"Whenever the Department cannot agree with the owner of any land, building, franchise, easement, sand, earth, stone, gravel or other property necessary to be taken or used in the construction, reconstruction, or maintenance of any State highway or proposed State highway, which the Department shall construct, reconstruct, straighten, widen, grade or otherwise improve, or shall propose to construct, reconstruct, straighten, widen, grade or otherwise improve, for the purchase thereof, the Department may, in the exercise of the power of eminent domain, acquire the same by condemnation by proceeding in the manner prescribed in chapter 61 of Title 10. Whenever any property shall be so acquired by the Department, the title to such property shall be in the State for the purposes for which it was acquired."

10 *Del. C.* § 6110, the plaintiffs sought an *ex parte* order granting immediate possession of the property described in the complaint. The Court declined to grant an *ex parte* order, in the absence of a showing of justifiable emergency, and the Court required the plaintiffs to give notice to the defendants of their intention to present an order for possession. Upon presentation of the order, after notice, the defendants opposed the entry of an order of possession upon the grounds of the objections and defenses stated in their answers, as amended. By 10 *Del. C.* § 6107, the Court is required to make preliminary disposition of objections and defenses to the taking.

The objections and defenses interposed by the defendants raise the following issues:

1. Is it necessary to take or use certain portions of the defendants' property for any public use or purpose within the scope of 17 *Del. C.* § 138?

2. Does 10 *Del. C.* Ch. 61 violate Art. I, § 8 of the Delaware Constitution[2] or the due process clauses of the State[3] and Federal Constitutions,[4] because of failure adequately to secure just compensation to the defendants?

3. Does 10 *Del. C.* § 6110(a)[5] violate the due process clauses of the State and Federal Constitutions because of failure to require notice to the defendants before entry of an order of possession?

[2]*Del. Const.* Art. I, § 8 provides:
"* * * nor shall any man's property be taken or applied to public use * * * without compensation being made."

[3]*Del. Const.*, Art. I, § 7, *Del. C. Ann.*

[4]*U. S. C. A. Const.*, 14th Amend.

[5]10 *Del. C.* § 6110(a) provides as follows:
"At any time after the filing of any condemnation proceeding under this chapter, the plaintiff, upon the filing of a notice of intention to take possession of the property sought to be condemned, or any part thereof, on a day therein specified, and upon deposit in court of the sum of money estimated by plaintiff to be just compensation for the property or the part thereof taken, has the right to enter into possession, occupy or take the property from and after such day, upon entry of an appropriate order by the court, which order may be made *ex parte* and without notice."

■ The defendants requested trial by petit jury of the issue of necessity for the taking. This request was denied by the Court on the ground that there is no common law or statutory basis for jury trial of any issue at this stage of a condemnation proceeding. There is strong implication in 10 *Del. C.* § 6107 and § 6108 that the issue of just compensation is the only issue to be decided by the commission. Moreover, it is the general rule elsewhere that the question of necessity for a taking, under the power of eminent domain, is an issue to be determined by the Court without a jury, in the absence of controlling statutory or constitutional provision. *Cf. Baxter v. City of Louisville,* 224 *Ky.* 604, 6 *S. W.* 2d 1074, 1077; *Wilton v. St. Johns County,* 98 *Fla.* 26, 123 *So.* 527, 65 *A. L. R.* 488; *City of Eugene v. Johnson,* 183 *Or.* 421, 192 *P.* 2d 251, 255.

■ A hearing was held before the Court upon the issue of the necessity of the taking for any proper public use. included within the scope of the power of eminent domain conferred by the Legislature upon the State Highway Department in 17 *Del. C.* § 138. The burden of proof was imposed upon the defendants, in view of the presumption of regularity and the *prima facie* case of necessity for a public use that is presented by a condemnation proceeding instituted under our present Statute by the State government. See 17 *Del. C.* § 132(c) (4); 10 *Del. C.* §§ 6107, 6108; compare 6 *Nichols on Eminent Domain* (3d Ed.) § 26.3; *Delfeld v. City of Tulsa,* 191 *Okl.* 541, 131 *P.* 2d 754, 143 *A. L. R.* 1032; *Dorman v. Philadelphia Housing Authority,* 331 *Pa.* 209, 200 *A.* 834, 841; *Jefferson County v. Clausen,* 297 *Ky.* 414, 180 *S. W.* 2d 297, 300.

It appears that the defendants' land is a triangular-shaped island at Prices Corner created by the intersections of Robert Kirkwood Highway, Center Road and Centerville Road. The Department seeks to take a strip of land, approximately 7½ feet wide, commencing at the intersection of Center Road and Kirkwood Highway and extending southerly along Center Road. The Department also seeks to condemn a strip of the defendants'

land along Centerville Road, approximately 30 feet wide[6] and it seeks to take a large segment of the apex of the triangle at the intersection of Center and Centerville Roads.

The defendants undertook to show that the flow of traffic does not justify the proposed widening of Center Road or of the boundaries of the intersection of Kirkwood Highway and Center Road. The defendants also adduced evidence to show that most of the land along Centerville Road was being taken for the purpose of developing that two-lane road into a four-lane road at some indeterminate time in the future and that only a small portion of the taking along Centerville Road is necessary for the reconstruction of that road as now proposed. The defendants attempted to show, further, that there was no necessity at all for taking the large segment at the apex of the triangle.

The Department's evidence tends to show that the land along Center Road must be taken in order to carry out its present plan to widen and improve that road and to obtain desirable visibility and accessibility at the intersection of Center Road and -Kirkwood Highway. The Department admitted, however, that the extent of the taking along Centerville Road was based, not upon the amount of land needed now for the reconstruction and repaving presently planned, but upon a need forecasted for a future time when it may be found necessary to expand that road from a two-lane highway to a four-lane highway. The Department conceded, also, that most of the large segment at the apex of the triangle is not needed now. The Department states, however, that this land will be needed in connection with the future development of Centerville Road so that there might be the desirable visibility and accessibility at the intersection of Centerville Road with Center Road when the former becomes a four-lane highway.

It thus appears from the evidence that there is no present need for most of the land being taken along Centerville Road

---

[6]The present right of way for Centerville Road is approximately 40 feet wide. The Department proposes to increase the right of way to 100 feet.

and at the intersection of that Road with Center Road; that there are no definite plans, resolutions, proposals or appropriations regarding the future construction of a four-lane highway on Centerville Road; and that no one can say definitely and positively when a four-lane highway will become necessary and will be constructed on Centerville Road. The Department's witnesses could only say that, upon the basis of present studies and of planning elsewhere, it is thought that a four-lane highway will probably be needed there at some time within the next three decades and that it would be economically expedient for the Department to obtain the necessary rights of way now before appreciation of property values in the growing area.

As has been noted, the Statute conferring the power of eminent domain upon the State Highway Department limits that power to the taking of property "necessary to be taken or used" for the public purposes stated in the Statute. 17 *Del. C.* § 138. When condemnation is sought under such a statute, it is generally held that the question of necessity is a judicial question upon which the property owner is entitled to be heard if he denies necessity. See 2 *Lewis Eminent Domain* (3d Ed.) § 599. That judicial review is restricted, however, to the function of protecting the landowner against fraud, bad faith or gross abuse of discretion. Generally speaking, when the Legislature delegates the right of eminent domain to a governmental agency for a public purpose, it may also, if there is no constitutional restriction, delegate to such agency the power of determining what property and how much property is necessary for the purpose. Such delegation of power was made in 17 *Del. C.* § 132(c) (4) wherein the Department is empowered to acquire by condemnation any land which "in the judgment of the Department" shall be necessary for the purpose of the improvement of State highways. A determination of necessity made under such grant of power will not be disturbed by this Court in the absence of a clear showing of fraud, bad faith or gross abuse of discretion. It is generally held that the necessity, propriety or expediency of appropriating property for public use, the amount or location

of the property to be taken and its suitability for the proposed use are all legislative questions and the determination of those matters by a grantee of the power of eminent domain is, in the absence of fraud, bad faith or gross abuse of discretion, final and not subject to review by the Courts. If there is reasonable possibility of need for a proper public purpose, there is no room for further judicial inquiry into the question of necessity for the taking. See 1 *Nichols on Eminent Domain* (3d Ed.) § 4.11[1-4]; 1 *Lewis Eminent Domain* (3d Ed.) § 370; 18 *Am. Jur.* "Eminent Domain" § 109; 29 *C. J. S.*, Eminent Domain, § 92; *City of Eugene v. Johnson*, 183 *Or.* 421, 192 *P.* 2d 251, 255; *Wilton v. St. Johns County*, 98 *Fla.* 26, 123 *So.* 527, 65 *A. L. R.* 488; *United States v. State of N. Y.*, 2 *Cir.*, 160 *F.* 2d 479; *United States v. Carmack*, 329 *U. S.* 230, 67 *S. Ct.* 252, 91 *L. Ed.* 209; *Johnson v. Consolidated Gas, Electric Light & Power Co.*, 187 *Md.* 454, 50 *A.* 2d 918, 921, 170 *A. L. R.* 709.

The prevailing views on the subject are summarized in 1 *Nichols on Eminent Domain* (3d Ed.) § 4.11[3] p. 383, as follows:

"* * * the legislature may, and usually does, delegate the power of selecting the land to be condemned to the public agent that is to do the work; in such case it makes little, if any, difference whether the grant of authority is, in terms, limited to such land as is 'necessary' for the purpose in view, for a general grant of authority carries the same limitation by implication and in either case the necessity is for the condemnor and not for the courts to decide, and the decision of such condemnor is final as long as it acts reasonably and in good faith. If the land is of some use to it in carrying out its public object, the degree of necessity is its own affair. Whether there is any necessity whatever to justify the taking is, however, a judicial question, and as a taking without necessity in such a case would be unauthorized, the courts may hold it to be unlawful without the reluctance they feel in declaring acts of the legislature unconstitutional." Compare *Thomison v. Hillcrest Athletic Association*, 9 *W. W. Harr.* 590, 5 *A.* 2d 236.

 In the application of these concepts, however, the Courts enforce a well-established limitation upon the power of eminent domain. One of the fundamental principles of eminent domain is that it shall not be exercised unless the property taken is to be devoted to a public use within a reasonable time after the taking. *Clendaniel v. Conrad*, 3 *Boyce* 549, 590, 83 *A.* 1936, 1049. The doctrine of reasonable time prohibits the condemnor from speculating as to possible needs at some remote future time. The condemning authority, of course, may take lands sufficient to provide for future needs as well as present needs; but, in this area, the condemning authority may not exceed that which may in good faith be presumed to be necessary for future use within a reasonable time. See 29 *C. J. S.*, Eminent Domain, § 92.

██ Applying these principles to the facts of this case, I conclude that, as to the land sought to be taken along Center Road and at the intersection of Center Road and Kirkwood Highway, there has been no showing of fraud, bad faith or gross abuse of discretion. There is reasonable possibility of need for this land, now and in the immediate future, and this Court will not substitute its judgment for that of the State Highway Department as to the necessity for the 7½ feet strip, more or less, which the Department says it needs in order to properly widen and improve Center Road and in order to improve visibility and accessibility at the intersection of that Road with Kirkwood Highway. Accordingly, the defendants' objection to this portion of the proposed taking, upon the ground of lack of necessity, may not be sustained.

 I am of the opinion, however, that most of the proposed taking along Centerville Road, and at the intersection of that Road with Center Road, violates the rule of reasonable time. As has been indicated, the Department has no present plans for utilizing most of that land and it is unable to state positively that it will ever use the land for the purpose for which it is sought. A mere contemplation of a road improvement at some indefinite time within the next thirty years is too speculative and too remote to justify the exercise of the power of em-

inent domain. While long range planning by the State Highway Department is certainly commendable, nevertheless, the rights of private property, which the law guards so zealously, may not be subordinated to the mere possibility or probability of a public use at some indefinite, remote time in the future.

In addition to violation of the doctrine of reasonable time, it would seem that the taking of land for a four-lane highway, under the circumstances existing in this case, would exceed the scope of power conferred upon the Department in 17 *Del. C.* § 138. The authority to condemn, as granted by that Statute, is limited to acquisitions for highways or "proposed" highways. In my opinion, the evidence shows that the four-lane highway has not reached the stage of a "proposed" highway in any sense of the quoted word.

It may be assumed that the Department will be able to condemn and take whatever land it may require in the future, if and when the need for a four-lane highway on Centerville Road may materialize. I think that the defendants may not be deprived of their land for public use until the need and the use become more imminent.

Under the evidence adduced, it is held that the Department may not now acquire by condemnation any portion of the proposed taking that is being sought in connection with, and for the purpose of, the development of a four-lane highway on Centerville Road. It is held that the taking of land along Centerville Road and at the intersection of that Road with Center Road, in contemplation of an expansion of Centerville Road into a four-lane highway at some indefinite future time, would not be a taking necessary for a proper public use and would invade the defendants' constitutional rights. *Del. Const.*, Art. I, §7 and § 8.

There remain for decision the two questions raised regarding the constitutionality of the Condemnation Statute.

## 1. *Just Compensation*

The defendants contend that the Delaware Condemnation Statute (10 *Del. C.* §6101 *et seq.*) must be declared unconstitutional because it fails to provide for adequate security of just compensation, in violation of Art. I, § 8 of the Delaware Constitution and the due process clauses of the State and Federal Constitutions. The defendants invoke the principle that the constitutional guaranty of just compensation for private property taken for a public use includes the right to have "reasonable, certain, and adequate provision" for securing compensation before property may be taken for public use. *E.g., Cherokee Nation v. Southern Kansas Ry. Co.*, 135 *U. S.* 641, 10 *S. Ct.* 965, 971, 34 *L. Ed.* 295.

The defendants contend that our Condemnation Statute permits the taking of private property without prior payment and without adequate and certain provision to secure subsequent payment of compensation to the owner. They point out that, under 10 *Del. C.* § 6110, the State[7] may acquire possession of private property by depositing "the sum of money estimated by plaintiff to be just compensation for the property" and that, since the amount of the deposit is within the discretion of the State and since there is no judgment[3] entered under the Statute against the State for any deficiency, there is no legal way to enforce the "final award" of just compensation. The defendants invite attention to the proposition that the State may not be

---

[7]The defendants' contentions include arguments based upon the hypothesis of the exercise of the power of eminent domain by private corporations. Since the instant case involves condemnation by an agency of the State government, and not by a private corporation, the defendants' contentions involving private corporations have not been considered and the question of the constitutionality of the Statute as to condemnation by private corporations is deemed to be beyond the scope of this decision. A litigant may be heard to question the validity of a statute only insofar as it is applied to his disadvantage. *Rindge Co. v. Los Angeles County*, 262 *U. S.* 700, 43 *S. Ct.* 689, 693, 67 *L. Ed.* 1186. Compare *Abbott v. Beth Israel Cemetery Ass'n.*, 13 *N. J.* 528, 100 *A.* 2d 532, 543.

[8]10 *Del. C.* § 6108(i) provides for entry of a "final award" in a special docket to be maintained by the Prothonotary for the purpose.

sued without its consent. They then contend that there is no security of compensation in a case, such as this, where the propriety of the taking and the constitutionality of the Statute are under attack and where, if upon final appeal the defendants' contentions should be sustained, the present proceedings would be dismissed and the State would be in possession of the defendants' land without any legal way for the defendants to obtain compensation from the State for resultant damage to business and buildings. The defendants also point to 10 *Del. C.* § 6113[9] and contend that, under the provisions thereof, the State may abandon the taking and decline to pay compensation because the word "may", as used in § 6113, is permissive and gives the State the option to take or leave the property after it has learned the amount of the award.

The defendants' contentions are without merit. Basically, these arguments are founded upon the persumption that the State may not be willing or able to honor a final award entered by this Court in a condemnation proceeding instituted by the State, through its Highway Department, for the acquisition of property, title to which will vest in the State. See 17 *Del. C.* § 138. The Court will not entertain such presumption which has no known basis in fact in the history of the State. It is generally held that a breach of public faith and credit by a State will not be presumed because it is not a reasonable possibility. See 3 *Nichols on Eminent Domain* (3d Ed.) § 8.711[2].

To the public faith and credit, the Statute adds other effective safeguards for further securing compensation to the property owner:

[9]10 *Del. C.* § 6113 provides as follows:

"§ 6113. Time for payment of award; interest

"In the event no review of a condemnation cause is taken, the plaintiff or plaintiffs may pay or tender the amount of the award within two months after the entry of the confirmed award of the Superior Court, and in the event a review to the Supreme Court is taken, plaintiff or plaintiffs may pay or tender the amount thereof within one month of the entry of any final award entered pursuant to the mandate of the Supreme Court. Interest shall accrue on the award from the date of taking possession or from the date of the award, whichever first occurs."

1) Title does not pass until the final award is fully paid. See 10 *Del. C.* § 6110 (c). Accordingly, the owner does not actually lose his property until he has received his just compensation.

2) Whenever possession has been taken "the obligation of the plaintiff to pay the amount ultimately determined as just compensation in the cause shall be absolute." 10 *Del. C.* § 6110 (c). The availability of a writ of *mandamus* to enforce such clear right becomes apparent. Compare *Lewis v. Du Pont,* 2 *Terry* 347, 22 *A.* 2d 832; see 6 *Nichols on Eminent Domain* (3d Ed.) § 28.21[1].

3) Before possession may be taken, the plaintiff is required to deposit in Court the amount of money estimated by the plaintiff to be just compensation. 10 *Del. C.* § 6110(a). The Court is not obliged to give "rubber stamp" approval to any deposit, reasonable or unreasonable, as is suggested by the defendants. It is apparent that this part of our Condemnation Statute was fashioned upon the Federal Declaration of *Taking Act,* 40 *U. S. C. A.* § 258a. Under that *Act,* it has been held that the owner is not without remedy of review by judicial inquiry as to the adequacy of the deposit and that, upon a proper showing, the owner is entitled to a judicial determination as to whether the deposit represents a good faith estimate of just compensation. See *United States v.* 44.00 *Acres, etc., D. C. N. Y.,* 110 *F. Supp.* 168. It has also been held that the Court may deny the right to possession if it should find, upon such inquiry, that just compensation has been grossly underestimated by the plaintiff and the deposit is unreasonably inadequate. See *United States v.* 48,752.77 *Acres, etc., D. C. Neb.,* 50 *F. Supp.* 563. It would appear, therefore, that a property owner, who is actually concerned about ultimate payment of the final award, may have judicial review of the adequacy of the deposit and may oblige the condemning authority to increase the deposit to a reasonable sum as the price of immediate entry.

The deposit requirement is the answer to the defendants' contention that there is no assurance of payment for dam-

ages arising from temporary possession in a taking which is later determined to be wrongful. Title will not have passed in such situation and the deposit will be available, either in the custody of the Court or in the hands of the owner, to right the wrong of any incidental damage that may result from temporary possession.

4) The Statute prohibits the Court from dismissing any condemnation action in which the plaintiff has taken possession and there is a mandate to the Court to award compensation wherever possession has been taken. See 10 *Del. C.* § 6110(c). These provisions constitute the answer to the defendants' contention that 10 *Del. C.* § 6113 permits the State to withdraw from a condemnation proceeding and to abandon the taking if it finds the award to be unacceptable. The obligation to pay the award is made mandatory by the provision of 10 *Del. C.* § 6110 (c) that, where possession has been taken, the obligation to pay the award "shall be absolute." It is quite clear that, as its title clearly denotes, § 6113 pertains only to the time within which payment of the obligation may be made and that it in no way relates to the degree of certainty of the obligation.

I am of the opinion that the above mentioned provisions of the Statute, buttressed with the assumption that the State will be willing and able to honor its obligations as created by its Courts, satisfy the constitutional requirement of reasonably certain assurance of payment of compensation prior to the taking. See 3 *Nichols on Eminent Domain* (3d Ed.) §§ 8.71-8.711 [4]; compare *Carpenter v. Du Pont,* 31 *Del. Ch.* 80, 66 *A.* 2d 602.

## 2. *Due Process*

The defendants contend that 10 *Del. C.* § 6110(a) is unconstitutional because it denies due process of law in that it does not require notice to the property owner prior to the entry of an order granting right of possession.

It is generally held that the requirements of due process are met in a condemnation proceeding if the owner has notice and

opportunity to be heard on the issue of just compensation. See 1 *Merrill on Notice* § 514; 2 *Lewis Eminent Domain* (3d Ed.) §§ 566, 567. Assuming, however, that due process requires notice prior to the entry of an order of possession, I am of the opinion that the Statute is not defective in that respect.

This phase of the constitutional attack is based upon the provision of § 6110(a) that the order of possession "may be made *ex parte* and without notice." It may be presumed that when this provision was written, the Legislature was aware of the fact that Courts always are reluctant to permit *ex parte* proceeding and that an order of the Court is entered *ex parte* only under extraordinary circumstances. Moreover, the Statute makes the Rules of this Court applicable in condemnation proceedings. See 10 *Del. C.* § 6103; Civil Rule 81, *Del. C. Ann.* Under the Rules and the firm practice of this Court, an order of the Court is entered only after notice, unless some exigency or other extraordinary circumstance moves the Court to act without notice.

The *ex parte* proceeding contemplated by § 6110(a) is permissive. It merely affords to the Court the power to act without notice in case of emergency when the public interest may require that possession be granted to the condemning authority without the delay of notice and hearing. When read in the light of the established practice and Rules of this Court, the requirement of notice is implicit in § 6110(a), except in case of emergency. We do not have the extraordinary situation in the present case. As has been indicated above, the Court required the plaintiffs to give notice to the defendants of intention to present the order of possession.

 As herein construed, there can be no question as to the constitutionality of § 6110(a) under the due process clauses of the State and Federal Constitutions. The attitude of the Courts toward a contention, such as this, is tersely stated at 1 *Nichols on Eminent Domain* (3d Ed.) § 4.103[1], as follows:

"* * * Legislatures rarely specifically enact that notice need not be given, but frequently inadvertently fail to make any pro-

vision for notice in statutes authorizing the taking of land by eminent domain. In such cases it is sometimes contended that the statutes are unconstitutional and the takings void, even though notice was actually given, but the great weight of authority is in favor of the validity of a taking in such a case. The duty to notify the owners is sometimes inferred from other provisions of the statute relating to a hearing, or, if this cannot be done the familiar maxim that a statute should, if possible, be construed as constitutional is brought into use, and as the legislature has not expressed itself one way or the other it is assumed that the serving of a reasonable notice was intended. While there are doubtless grave practical difficulties in the application of this rule, no court which really intended to abide by the fundamental principles of constitutional government as they were understood when the power of the courts to set aside acts of the legislature was established, would fail to find some means of enforcing a statute which neglected to provide for notice in such a way as to avoid the necessity of declaring it to be unconstitutional."

Because a portion of the proposed taking has been found to be in violation of the constitutional rights of the defendants and because the description of the property covered by the complaint is indivisible, the complaint must be dismissed. Leave to amend will be granted upon proper application.