407 P.2d 91

**CITY OF PHOENIX, a municipal corporation, Appellant,**

v.

**Charles DONOFRIO, Jr., Trustee under the Last Will and Testament of Charles Donofrio, Deceased, et al., Appellees.**

**No. 8454.**

Supreme Court of Arizona.

En Banc.

Oct. 29, 1965.

Rehearing Denied Nov. 23, 1965.

Merle L. Hanson, City Atty., and Jay Dushoff, Sp. Counsel to City of Phoenix, for appellant.

Lewis, Roca, Scoville, Beauchamp & Linton, by John P. Frank and Don A. Davis, Phoenix, for appellees.

UDALL, Justice.

This is an appeal by the City of Phoenix, hereinafter referred to as appellant, from the dismissal of its amended complaint by the Superior Court of Maricopa County. Appellant filed a complaint in eminent domain on March 29, 1963. Upon motion to dismiss for failure to state a claim, the complaint was dismissed on May 24, 1963 with leave to amend within twenty days. Appellant filed an amended complaint on June 13, 1963, and the amended complaint was dismissed for failure to state a claim on December 23, 1963. Judgment was entered thereon June 1, 1964, and Notice of Appeal was filed with this Court on the same

date. We have jurisdiction under A.R.S. § 12–2101 as amended.

Appellant brought suit to condemn for municipal purposes two parcels of land located in the vicinity of the Phoenix Municipal Building. Paragraph II of the amended complaint alleged, in part:

"* * * said property must be acquired by the City of Phoenix for the purpose of establishing parking areas for official City vehicles, parking for members of commissions and boards of the City of Phoenix and parking for the general public conducting business with the City of Phoenix; and, further, for the ultimate establishment of administration buildings and grounds to meet the expanding municipal needs of the City of Phoenix, * * *; that the use for which said property is sought by the City of Phoenix is a public use and necessity therefor exists as a matter of public convenience, necessity and welfare."

Thus, the amended complaint sought to condemn certain land which would in the long run be developed into administration buildings and grounds, but in the short run would be used as a vehicle parking lot.

The trial court granted the motion to dismiss the amended complaint and rendered judgment accordingly, stating:

"* * * the Legislature has not by statute empowered the cities and towns of Arizona to exercise the power of eminent domain for the purposes of creating parking areas for Sec. 12–1111 (3) of our code * * * does not contain the language and is not sufficiently broad enough to lay a foundation for any such implication.

* * * plaintiff's pleadings and its ordinance upon which its pleadings are based, and which speak of the ultimate establishment of administration buildings and grounds to meet the expanding municipal need of the City of Phoenix, are too remote and highly in the abstract."

The questions presented for review, in accordance with Ariz. S.Ct.R. 5, subsec. b, 7, as amended, 17 A.R.S., are: (1) whether A.R.S. § 12–1111, subsec. 3 (1956) grants cities the power of eminent domain to acquire property for parking areas to be used in conjunction with city buildings; and (2), whether a condemnation complaint alleging the land condemned ultimately will be used for establishment of administration buildings and grounds states a claim upon which relief can be granted.

A.R.S. § 12–1111 (1956) lists the purposes for which eminent domain may be exercised. This statute states, "the right of eminent domain may be exercised by * * * a * * * city * * * for the following uses:

*  *  *  *  *  *

3. Buildings and grounds for the use of a
\* \* \* city \* \* \*
\* \* \* \* \* \*."

Nowhere in A.R.S. § 12–1111 (1956) is there an express grant of power to a city to condemn for parking areas for official vehicles, parking for members of city commissions and boards, and parking for the general public while conducting business with the city. Therefore, if the power to condemn for these purposes exists, it must be by implication from the express powers given by A.R.S. § 12–1111, subsec. 3 (1956).

Appellee contends there is no statutory power of condemnation for off-street parking purposes, express or implied, and appellant's request for such authority should be made to the legislature. This argument is couched upon the wording of A.R.S. § 12–1111 (1956) which, appellee urges, is explicit and sets forth the purposes for which eminent domain may be exercised with some degree of particularity. Hence, appellee concludes, the statute must be strictly construed; and so construed, this statute does not give the city power to condemn property for use as a parking lot.

Nearly all of the Arizona statutes pertaining to eminent domain were adopted from California. Viliborghi v. Prescott School Dist. No. 1 of Yavapai County, 55 Ariz. 230, 100 P.2d 178 (1940). In Arizona, like California, the exercise of the right of eminent domain has largely been provided for by the legislature rather than by a constitutional enabling provision. See City of Scottsdale v. Municipal Court of the City of Tempe, 90 Ariz. 393, 368 P.2d 637 (1962).

One of the prerequisites to the taking of property by condemnation under A.R.S. § 12–1112 (1956), is that, "The use to which the property is to be applied is a use authorized by law." A similar provision in California, C.C.P. § 1241, requires that the use be one of "those public uses which the legislature has authorized." Lindsay Irrigation Company v. Mehrtens, 97 Cal. 676, 32 P. 802 (1893).

■ It is a basic principle of law that a municipality can only exercise the right of eminent domain when it is conferred upon it by the legislature expressly or by necessary implication. See, 11 McQuillin, Municipal Corporations, § 32.12 (3d ed. 1964).

■ The purposes for which eminent domain may be exercised are set forth in A.R.S. § 12–1111 (1956), and nowhere in this section is taking for off-street parking lots declared to be an approved purpose. A fundamental rule of statutory construction is that courts will not read into a statute something which is not within the manifest intention of the legislature as gathered from the statute itself. State ex rel. Morrison v. Anway, 87 Ariz. 206, 349 P.2d 774 (1960). Also, a court will not inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions. We

hold that the "building and grounds" provision of A.R.S. § 12–1111, subsec. 3 (1956) does not include the power, expressly or by implication, to condemn private property for the use of official city vehicles, parking for members of commissions and boards of a city, and parking for the general public conducting business with a city.

A.R.S. § 12–1111 (1956) was adopted from California. See Calif. C.C.P. § 1238. In City of Whittier v. Dixon, 24 Cal.2d 664, 151 P.2d 5, 153 A.L.R. 956 (1944), the question as to whether the California statute authorized condemnation for off-street parking purposes was mentioned by the Supreme Court of California. The taking for parking places was approved in the Dixon case on the authority of the "Vehicle Parking District Act of 1943," which expressly provided for the exercise of the power of eminent domain to acquire parking lots. One year later, Calif. C.C.P. § 1238 was amended by the California legislature and Calif. C.C.P. § 1238.1 now expressly declares off-street parking to a public use for which the right of eminent domain can be exercised.

The legislative plan for the exercise of the power of eminent domain in Arizona is firmly committed to delegation for specific purposes as indicated by A.R.S. § 12–1111 (1956). This is clearly shown by A.R.S. § 12–1111, subsec. 6 (1956), which states:

"Roads, streets and alleys, *and all other public uses* for the benefit of a county, city, town or village, or the inhabitants thereof, *which is authorized by the legislature*. The method of apportioning and collecting the costs of the improvements authorized by paragraphs 3, 4, 5 and 6 shall be as provided in the law by which they are authorized." (Emphasis added)

A recent Arizona legislative declaration related to this issue is found in A.R.S. § 9–602.01 (Supp.1965). This statute reads:

"Off-street parking sites in cities containing less than one hundred fifty thousand population; acquisition of property; exceptions to acquisition of property.

"A. When the public interest or convenience requires in any city with a population of less than one hundred fifty thousand, as determined by the last federal decennial census, the city or town council of such municipality may order the laying out, opening, extending, widening, straightening or closing up, in whole or in part, of any off-street parking site within the municipality, and acquire any property necessary or convenient for that purpose.

"B. The owner of property who, in connection with a business, owns adjoining property which is available for use by his customers for parking, shall

not be subject to the provisions of this article without his consent. The owner of property used exclusively for residential purposes shall not be subject to the provisions of this article without his consent."

The population requirement of the above quoted statute quite clearly excludes the City of Phoenix from its operation. However, the amendment history of the statute is interesting, and helpful in construing A.R.S. § 12–1111 (1956). As originally introduced, the above statute was a part of H.B. 18, and in its original form read:

"NEW SEC. 9–602.01 OFF STREET PARKING SITES IN CITIES CONTAINING LESS THAN ONE HUNDRED FIFTY THOUSAND POPULATION; ACQUISITION OF PROPERTY *BY CONDEMNATION*

"When the public interest or convenience requires in any city with a population of less than one hundred fifty thousand, as determined by the last federal decennial census, the city or town council of such municipality may order the laying out, opening, extending, widening, straightening or closing up, in whole or in part, of any off street parking site within the municipality, and acquire, *by condemnation,* any property necessary or convenient for that purpose." (Emphasis added)

It will be noted that the words "by condemnation" in both the title and body of the bill were deleted and a new subsection "B" was added before it became law. This deletion may be considered indicative of legislative intent since the word "acquire" might otherwise include taking by condemnation. Also, this legislative declaration on the off-street parking issue is fully complimented by appropriate authority to issue bonds, spend public monies, create improvement districts and the like.

We think the taking of property by eminent domain for off-street parking purposes is particularly a matter for the legislature. If left with the legislature, the entire needs of a city can be considered and sufficient control exercised to assure a public purpose.

█ If the appellant has no power to condemn land for off-street parking, then the complaint in condemnation must stand or fall on an alleged "ultimate" use for administrative buildings and grounds. The appellant contends that the condemnor need not allege reasonable immediacy of use since the absence of such fact is an affirmative defense. A mere allegation of use for municipal buildings and grounds may well have been sufficient to put this matter within the general rule relating to the assertion of affirmative defenses.

A.R.S. § 12–1117 (1956) states a complaint in condemnation shall set forth:

"1. The name of the person asserting the public use for which the property is sought, as plaintiff.

"2. The names of all owners and claimants of the property, if known, or a statement that they are unknown, as defendants.

"3. A statement of the right of plaintiff.

"4. If a right of way for a road, ditch, canal or other purpose is sought, the location and general route, accompanied with a map thereof.

"5. A description of each piece of land sought to be taken, and whether the land includes the whole or only a part of an entire parcel or tract."

Thus the complaint in eminent domain need not allege that the taking is for a use within a reasonably foreseeable future or that a use is merely ultimately contemplated. We think, however, that alleging an ultimate use must be distinguished from an allegation that the land is to be used in the reasonable foreseeable future.

Condemnation of land for merely ultimate use, even though the use is authorized by law, is defective on its face, and cannot be cured by an intermediate need for off-street parking, a use which is unauthorized by the legislature.

 The lower court was correct in holding that the allegations of "ultimate establishment of administrative buildings and grounds * * * are too remote and highly in the abstract," and therefore the complaint failed to state a claim upon which relief could be granted.

Judgment affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and BERNSTEIN and McFARLAND, JJ., concur.