536 P.2d 230

**CITY OF PHOENIX, a Municipal Corporation, Appellant,**

v.

**O. K. McCULLOUGH and Mary McCullough, his wife, Appellees.**

**No. 1 CA–CIV 2340.**

Court of Appeals of Arizona,
Division 1,
Department B.

June 10, 1975.

Rehearing Denied Aug. 8, 1975.
Review Denied Oct. 14, 1975.

Flynn, Kimerer, Thinnes & Galbraith by Donald W. Lindholm and James E. Carter, Asst. City Atty., Phoenix, for appellant.

Dushoff & Sacks by Jay Dushoff, Phoenix, for appellees.

## OPINION

JACOBSON, Presiding Judge.

This appeal from a summary judgment, in essence denying to the City of Phoenix the right to condemn property for purported airport purposes, raises the following questions:

(1) Does the City of Phoenix have the power to condemn property for use as off-street parking in connection with an airport facility?

(2) Must the City have funds on hand to pay for any property condemned at the time the condemnation action is commenced?

(3) Was the City's contemplated use of the property sought to be condemned so remote and speculative as to negate the "necessity" for the taking of the property?

The trial court on the condemnees' motion for summary judgment held that the City did possess the power to condemn the property for use as off-street parking in connection with an airport facility; that the City need only have funds to pay for the property condemned at time of judgment and not at the time the action was commenced; but that the City's proposed use of the property in question was so remote and speculative as not to conform to the law in Arizona on eminent domain. It is this last holding which the City of Phoenix appeals. The property owner on the other hand urges that the trial court's granting of summary judgment may be upheld on appeal by answering the first two questions in their favor.

The facts, which are presented in a light most favorable to the appellant, the City of Phoenix, are as follows.

On August 12, 1969, the City Council of the City of Phoenix passed Ordinance No. S–4878 authorizing various city officials to acquire title to two parcels of land "for the purpose of expanding, improving and developing Sky Harbor Municipal Airport." One of these parcels consisted of five lots owned by the appellees, O. K. McCullough and Mary McCullough. This ordinance further authorized the acquisition of these parcels by eminent domain. Pursuant to this ordinance, the City on August 28, 1969 instituted this action seeking to condemn the lots owned by the McCulloughs.

In connection with a general plan to expand Phoenix Sky Harbor Airport, a bond election was held on June 10, 1969, which, among other things authorized airport revenue bonds in the amount of $58,900,000 to pay for the proposed expansion. The United States Supreme Court later held that

this bond election was invalid. On August 18, 1970, a new, special election was held and the bond program was again approved.

Approximately two and a half years after the present action was commenced, the City Council passed Ordinance No. S–6292 dealing with the proposed development and expansion of Sky Harbor Airport. This ordinance adopted an "Airport Master Plan and Development Program" prepared by Quinton–Budlong "as the general concept and guide for the expansion and development and as the long range plan, for Phoenix Sky Harbor International Airport." According to this Master Plan, approximately 20% of the McCullough property would be used between 1984 and 1992 and the remaining 80% would be used in the year 2015. One of the uses described for this property in the Master Plan is for off-street parking. An affidavit of the Director of the Phoenix Airport Department filed by the City in opposition to the motion for summary judgment stated that the McCullough Properties "were required at the time this said action was filed to provide for the expansion of the airfreight [sic] facilities and to provide ancillary services necessary thereof."

## MAY THE CITY CONDEMN PROPERTY FOR OFF-STREET PARKING IN CONNECTION WITH AN AIRPORT FACILITY?

The first issue raised in this appeal is whether the City may condemn the McCullough property for off-street parking at all. The McCulloughs contend that the case of City of Phoenix v. Donofrio, 99 Ariz. 130, 407 P.2d 91 (1965) holds that off-street parking is not an authorized eminent domain purpose for the City of Phoenix. What the *Donofrio* case acutally held was that A.R.S. § 12–1111 (1956) did not specifically authorize the taking of property by eminent domain for off-street parking.[1] Since this was the only statutory authority under which the City was proceeding in *Donofrio*, the absence of specif-

ic authority in that statute defeated the action. The City in the present action was proceeding to condemn the McCullough property under authority of A.R.S. § 2–306 (1974) which provides:

"Private property required by a city, town or county for an airport shall be acquired by purchase if the municipality can agree with the owner on terms of purchase. If unable to agree, the municipality may acquire the property by condemnation in the manner provided by law whereby cities, towns and counties are authorized to acquire real property for public purposes other than street purposes, or if there is no such law, then in the manner provided by general law for condemnation of private property."

This statute gives the City, separate and apart from the authority granted by § 12–1111, authority to condemn private property for an airport. Further, in our opinion, acquiring of property for off-street parking is a necessary adjunct to the operation of an airport, which of necessity contemplates the arrival and departure of people by some means of transportation to utilize the air transportation.

We are bolstered in this opinion by A.R.S. § 9–522 (1956) which provides in part that:

". . . [A] municipality may:

"1. Subject to the requirements and restrictions of §§ 9–515 through 9–518 . . . acquire, by . . . the exercise of the right of eminent domain, a utility undertaking . . . .."

A.R.S. § 9–521(4) (1956) defines a "utility undertaking" as:

"(b) Airport buildings or other airport facilities or buildings or structures to provide off-street parking of motor vehicles, together with all parts thereof and appurtenances thereto."

While it might be argued that these two statutory provisions only apply to the acquisition of existing facilities, a point which we do not decide, it is apparent that

---

1. A.R.S. § 9–672.02 (Supp.1974) amended in 1970, now specifically authorizes all cities to condemn for off-street parking.

the legislature was cognizant that a necessary adjunct to the acquisition of an airport is the acquisition of off-street parking facilities.

It is argued however, that the *Donofrio* decision can be construed to hold that if a proposed use of property is not specifically authorized as a proper use for condemnation purposes, the fact that the proposed use may be a necessary adjunct to an authorized use does not grant authority to condemn for the proposed use. However, it should be kept in mind that the *Donofrio* decision was construing the grant of eminent domain power contained in A.R.S. § 12–1111, which by its terms is a specific grant of power for specific uses, i. e., municipal building. In our opinion, the grant of power under A.R.S. § 2–306 to acquire an "airport" is a more general conceptual grant. The term "airport" embraces numerous uses associated with a modern air facility, for example runways, taxi strips, terminals, restaurants and air freight facilities, to name just a few. We do not believe that it could be seriously argued that the right to condemn for an "airport" would include only the right to condemn land for a runway, but not a terminal building. Likewise, we are of the opinion that the power to condemn for an "airport" of necessity includes the right to condemn for off-street parking which is an integral part of the use of that airport. *See* City of Atlanta v. Airways Parking Company, 225 Ga. 173, 167 S.E.2d 145 (1969).

We therefore hold that the City of Phoenix under the statutory authority granted to it to acquire land for airport facilities by eminent domain has the authority to acquire land for off-street parking to be used in connection with that airport facility.

## MUST THE CITY HAVE FUNDS ON HAND AT THE TIME THE SUIT FOR CONDEMNATION IS FILED?

█ The condemnees argue that since the bond election to generate funds for the airport expansion which preceded the filing of this complaint was subsequently held invalid and that a valid bond election was not held until after the filing of suit, the City did not have monies to pay for the property at time of suit and this somehow defeats the City's action. No citation of authority is given for this proposition.

The statutory scheme for payment by the condemning body of property condemned is contrary to the condemnees' assertion. Thus, A.R.S. § 12–1127(A) (1956) provides in part: "At any time after judgment is entered . . . *when plaintiff has paid into court for defendant or defendants the full amount of the judgment . . ..*" Likewise, Subsection (B) of this section provides in part, "The defendant or defendants who are entitled to the money paid into court upon *any judgment* may demand and receive the money at any time thereafter upon an order of the court. . . ." (emphasis supplied) And, finally, A.R.S. § 12–1124 (1956) provides that if after judgment the plaintiff fails to deposit the funds in court, "the defendant or defendants may have execution as in civil actions, and if the money cannot be collected on execution, the court, upon a showing to that effect, shall set aside and annul the entire proceedings . . .."

█ It is therefore clear that it is not the failure to have monies available at the time of instituting the action which will defeat the proceedings, but the failure to pay after judgment is rendered which will "annul the entire proceedings." We so hold.

## HAS THE CITY SHOWN A SUFFICIENT "NECESSITY" FOR THE TAKING OF THE PROPERTY?

█ The City first attacks the trial court's ruling that its proposed use of the property sought to be condemned was remote and speculative as being a contested issue of fact, not subject to resolution by summary judgment. In this regard the City argues that the affidavit of the Director of the Phoenix Airport Department stating that the McCullough property "was

required at the time this action was filed" raised a factual issue as to when the Mc-Cullough property was to be used, regardless of the adoption of a master plan indicating the property would not be used until 1984 or 2015. We do not believe this affidavit raised such a factual issue. First, Rule 56(e), Rules of Civil Procedure, 16 A.R.S., requires that "affidavits shall be made on personal knowledge . . . and shall show affirmatively that the affiant is competent to testify to the matters stated therein." While the affidavit identifies the affiant as the "Director of the Airport Department of the City of Phoenix," there is no showing in that affidavit that he is competent to testify as to the specific uses to which airport property shall be put, or when such uses shall take place. This is especially true when the governing body of the City, the Council, has specified a different use and a different time. Second, upon analysis, this affidavit merely states that at the *time* the action was filed, a specific use and requirement was necessary. There is no showing that *at the time* this matter was heard that this requirement and use was still in existence. Both parties agree a condemning body's anticipated use of property sought to be condemned may change. Thus, both the original Ordinance No. S–4878 passed in 1969 and the affidavit of the Director are merely evidence of the intent to use property in a certain manner at a specified time—1969. This intended use could possibly be considered as continuing were it not for the clear and distinct evidence that the intended use had been changed. This clear and distinct evidence is in the form of Ordinance No. S–6292 which shows that at the time this matter was heard the City did not intend to use the property immediately but possibly intended to use a portion of it in 1984 and the balance in 2015. There is simply no evidence that this is not the present intent of the City and therefore there is no factual dispute on this issue which would preclude the granting of summary judgment.

This then brings us to the crux of the problem. Does the fact that the City's present intention does not contemplate the use of the condemnees' property until possibly 1984 or 2015, as a matter of law, preclude its taking at the present time [1]? In answering this crucial question it is necessary, in turn, to answer the following questions:

(1) Is it incumbent upon the City, in acquiring property for airport purposes, to show that the property sought to be acquired is "necessary to such use?"

(2) If the City must show necessity, what is the scope of judicial review of the City's council's determination that necessity exists?

(3) What is the proper test in determining necessity when the contemplated use by the condemning body is in the future?

▆ Before discussing these issues it is important to keep in mind that the term "necessary to such use" contemplates a time element. This is so, for if the property sought to be condemned will never be used for the purpose contemplated by the condemning body, it obviously is not "necessary" to condemn that property. It is in this conceptual framework of time being an element of necessity that the following discussion takes place.

▆ The City first argues that under A.R.S. § 2–306, the statutory provision al-

---

1. On April 16, 1975, the Supreme Court issued its opinion in City of Phoenix v. Space Data Corporation, 111 Ariz. 528, 534 P.2d 428. It appears that this case had the same question as to necessity as is present in the case subject. In that opinion the Supreme Court held that there was a factual issue presented as to the necessity of the City con-

demning the condemnee's property for airport expansion which would preclude the granting of summary judgment. This court is not privy to the record in the Supreme Court on this issue and therefore is unable to determine whether that ruling is binding on this court.

lowing condemnation for airport purposes, a showing of necessity is not required and thus time is not an element to be considered in the contemplated use of the property.

In our opinion, A.R.S. § 2–306 may not be so read. This section in part provides, "the municipality may acquire the property by condemnation *in the manner provided by law* whereby cities, towns and counties are authorized to acquire real property for public purposes . . . ." (emphasis supplied)

In determining "the manner provided by law" for acquiring real property, reference must be made to A.R.S. § 12–1112 (1956) entitled "Prerequisites to taking property by condemnation." This section provides, in part:

"Before property may be taken, it shall appear that:

\*    \*    \*    \*    \*    \*

"2. The taking is necessary to such use."

We therefore hold that before the City may acquire property for airport purposes, it must show that the property sought to be taken is "necessary" for that airport use. City of Phoenix v. Space Data Corporation, 111 Ariz. 528, 534 P.2d 428 (1975).

The City next argues that if necessity must be shown, then this necessity was determined by the original ordinance passed in 1969, and this legislative declaration of necessity is not subject to judicial scrutiny. The question of judicial review of the condemning authority's determination of necessity was first touched upon in the case of Mosher v. City of Phoenix, 39 Ariz. 470, 7 P.2d 622 (1932), which in passing on a determination of the amount of land necessary for street widening, stated:

"The court, in our opinion, properly held that this was concluded by the legislative body of the city declaring the necessity." 39 Ariz. at 482, 7 P.2d at 626.

While *Mosher* was partially overruled on another point In re Forsstrom, 44 Ariz. 472, 38 P.2d 878 (1934), the language quot-

ed above was repeated with approval in Citizens Utilities Water Co. v. Superior Court, 108 Ariz. 296, 299, 497 P.2d 55, cert. denied 409 U.S. 1022, 93 S.Ct. 462, 34 L. Ed.2d 314 (1972). However, the *Citizens Utilities* case proceeded to review the evidence presented to determine whether the action of the city council declaring that necessity existed was arbitrary. Moreover, it is clear that since *Mosher,* the Arizona courts have indulged in reviewing the legislative body's determination of necessity. *See* Chambers v. State, 82 Ariz. 278, 312 P.2d 155 (1957).

■ In view of this willingness of the courts to review the legislative determination of necessity, we believe the rule to be that a condemnor's determination of necessity should not be disturbed on judicial review in the absence of fraud or arbitrary and capricious conduct. Citizens Utilities Water Co. v. Superior Court, *supra*; Bowling v. State, 428 P.2d 331 (Okla. 1967); Woolley v. State Highway Commission, 387 P.2d 667 (Wyo.1963).

The City finally argues that if judicial review of necessity can occur only on the basis of arbitrary or capricious conduct (there is no fraud alleged) the City has the right to consider future needs in condemning property and, at least as a matter of law, its determination in this case was not arbitrary or capricious.

■ There is no doubt that under existing Arizona law a condemning authority may legitimately consider future needs in determining what property and the amount of property is necessary for use. Citizens Utilities Water Co. v. Superior Court, *supra*; Solana Land Co. v. Murphey, 69 Ariz. 117, 210 P.2d 593 (1949). As stated in *Solana Land Co.,* quoting with approval from Rindge Company v. Los Angeles County, 262 U.S. 700, 43 S.Ct. 689, 67 L. Ed. 1186 (1923):

"In determining whether the taking of property is necessary for a public use not only the present demands of the public, but those which may be fairly antici-

pated in the future, may be considered." 69 Ariz.App. at 125, 210 P.2d at 598.

The question then becomes how far in the future may the condemnor crystal gaze before the taking loses the essence of necessity? This search requires a balancing of competing interests. Obviously, a condemnor considering future needs is interested in the legitimate pursuit of saving taxpayers' money by acquiring as much land as possible in a rising land value market. Moreover, a systematic planning for future public use should be encouraged. Equally as obvious is the interest of the private landowner in holding and using his property as long as possible, not only to take advantage of rising real estate values, but also to enjoy the advantages that land ownership affords. Moreover, there is something to be said for keeping private real property on the tax rolls as long as that property is not needed for public use. It is thus just as important to keep within bounds government planners whose schemes require an ever-increasing diet of private land to satisfy their planning appetites as it is to encourage systematic planning of acquisition of land for public use. The Arizona Supreme Court recognized these boundaries in City of Phoenix v. Donofrio, *supra,* by holding that the City's *ultimate* intended use of private property for administrative building was "too remote and . . . abstract" to require its taking for public use. The *Donofrio* court indicated that the proposed public use must occur in "a reasonably foreseeable future." 99 Ariz. at 136, 407 P.2d at 95.

This concept of reasonableness has found expression in other jurisdictions. For example, in State v. 0.62033 Acres of Land in Christiana Hundred, 49 Del. 90, 110 A.2d 1 (1954), aff'd 49 Del. 174, 112 A.2d 857 (1955), the court stated:

"One of the fundamental principles of eminent domain is that it shall not be exercised unless the property taken is to be devoted to a public use within a reasonable time after the taking (citation omitted). The doctrine of reasonable time

prohibits the condemnor from speculating as to possible needs at some remote future time. The condemning authority, of course, may take lands sufficient to provide for future needs as well as present needs; but, in this area, the condemning authority may not exceed that which may in good faith be presumed to be necessary for future use within a reasonable time." 110 A.2d at 6.

The City in turn cites Port of Umatilla v. Richmond, 212 Or. 596, 321 P.2d 338 (1958) for authority that the proper test to be applied is what "probable future needs" may require. We reject the wording of such a test and we do so based upon the Arizona authority of City of Phoenix v. Donofrio, *supra,* and what, in our opinion, is a distinction without a difference. What is "probable" has connotations of "reasonableness."

We therefore hold that the condemning authority may, in acquiring private property for public use, take not only such property as is necessary to satisfy present needs, but may acquire such additional property as will be put to public use within a reasonable time thereafter. In determining what constitutes a reasonable time, the surrounding circumstances must be considered.

Applying this test to the case under discussion, can the court say, as a matter of law, that the City of Phoenix was arbitrarily capricious in determining that a reasonable time for use was 15 to 46 years in the future? Under the circumstances of this case, we have no other choice. While we have held that there is no question of fact that the City does not presently intend to use McCullough property immediately, there is question of whether the City will even use the property in 1984 or 2015. Thus, the "Master Plan" adopted by the City states that it is a "general concept and guide." The City attorney was candid in his argument to the trial court, by stating:

"This [Master Plan] is a plan developed by consultants for a concept of de-

velopment and I think, Your Honor and Mr. Dushoff, and all of us here in the room, know that plan is going to change. There is no way we can know today precisely how we are going to use these two lots in the year 2015. We don't know."

We might hesitate to hold that 15 years in the future was not a reasonable time for future planning (however, we would have less hesitancy about 46 years), but coupled with the prospect that even this 15-year use may change, we are drawn to the conclusion that if the condemning body is uncertain when future use shall occur, the future use becomes unreasonable, speculative and remote as a matter of law and defeats the taking.

For the foregoing reasons, the judgment of the trial court dismissing the City's complaint for condemnation is affirmed.

HAIRE, Chief Judge, Division 1, concurs.

EUBANK, Judge (dissenting in part, and concurring in part).

I concur with the majority opinion that the city has the power to condemn private property for parking in connection with an airport, and that the city need not have the funds on hand to pay for the property at the time the condemnation action is commenced. I dissent, however, from that part of the opinion which holds that the taking was *not* necessary as a matter of law. It is my view that the question of necessity is primarily a legislative one, which, although subject to limited judicial review in Arizona, cannot be disposed of by summary judgment. *See* Note, Judicial Review in Eminent Domain Proceedings, 15 Ariz.L.Rev. 796 (1973).

At the point where "necessity" supports exercise of the power of eminent domain, we have one of the clearest examples of the separation of powers, because the act of determining "necessity" is solely a legislative function. Mosher v. City of Phoenix, 39 Ariz. 470, 7 P.2d 622 (1932); 26 Am.Jur.2d, Eminent Domain § 111 (1966).

In Citizens Utilities Water Co. v. Superior Court, 108 Ariz. 296, 497 P.2d 55 (1972), our Supreme Court, citing Mosher with approval, stated:

"We hold that the action by the City of Tucson to condemn the property of Citizens is a taking for public use, as that term is used in the Arizona Constitution.

"Citizens, however, contends that even if this is true, the taking of the properties outside the city that do not serve Tucson citizens, is not 'necessary' as required by the statutes and charter. The city takes the position that the determination of necessity is a legislative decision of the city council which may not be reviewed by the courts, absent fraud or arbitrariness.

"Since we have ample Arizona cases to determine this issue, there is no need to discuss the cases in other jurisdictions cited by Citizens. The issue was decided in Mosher v. City of Phoenix, 39 Ariz, 470, 7 P.2d 622, where we held:

'Evidence [was objected to] upon the question of whether or not the amount of land proposed to be taken was necessary for the widening of the street. The court, in our opinion, properly held that this was concluded by the legislative body of the city declaring the necessity.' p. 482, 7 P.2d p. 626.

We find an absence of arbitrariness on the part of the city here.

"At the trial, the Tucson City Manager testified as to the desirability of condemning *all* of Citizens' properties. His reasons appear in the transcript as an offer of proof, because the trial court refused to admit them. The reasons are material and, even though not admitted in evidence, they are the bases of very powerful arguments for permitting all of the properties to be condemned. (108 Ariz. at 299, 497 P.2d at 58).

Implicit in the above language is the fact that Arizona courts will take evidence on

the question of "necessity" in order to determine "fraud or arbitrariness". Since all presumptions favor the city's determination of "necessity", the burden of proving fraud or arbitrariness is on the party opposing that determination, the appellees herein. Under these circumstances, *time* alone is not determinative of the issue. In Citizens, the Supreme Court, quoting with approval from City of Tucson v. Sims, 39 Ariz. 168, 4 P.2d 673 (1931), stated:

"That the city may anticipate its growth, may be seen from the following language in City of Tucson v. Sims, 39 Ariz. 168, 4 P.2d 673:

'Before it could furnish its own residents with water it was necessary that it secure from some source a supply sufficient in quantity for this purpose and that it install a system for distributing it. . . . Its distributing system was built to meet the needs of a growing population and was, therefore, at that time capable of carrying water to a greater number of people than lived within its boundaries. . . . The city of Tucson, as a result of placing itself in a position to serve its own users found itself in ownership and control of a surplus of domestic water which could with little if any additional cost be supplied to those outside its limits and its income thereby increased.' Pp. 176–177, 4 P.2d p. 675." (108 Ariz. at 300, 497 P.2d at 59).

Although Sims concerns the future growth of a city water system, the same rationale would apply to an airport. The needs of a modern airport (appellant operates one of the largest) are complex, requiring space for future planning and growth. On the state of the record before us, I cannot say that the city's determination of "necessity" was improper or arbitrary, as a matter of law.

Recently, our Supreme Court reversed the granting of summary judgment in favor of a property owner on the issue of "necessity" in a case involving the expansion of Sky Harbor Airport. Although the Court did not cite Citizens, it is clear to me that the Supreme Court recognized that the issue of "necessity" always presents a genuine issue of material fact. *See* City of Phoenix v. Space Data Corp., Ariz., 534 P.2d 428 (1975).

Finally, I disagree with the conclusion reached by the majority concerning A.R.S. § 2–306, and its relationship to A.R.S. § 12–1112. In resolving the question of whether the city can condemn property for off-street parking in connection with an airport, we recognized that a special statute, A.R.S. § 2–306, governed the general statute on condemnation, A.R.S. § 12–1112, and therefore we concluded that Donofrio was inapplicable. Logic dictates the same conclusion insofar as these statutes concern the issue of "necessity". The Supreme Court said as much in Citizens when, quoting from Desert Waters, Inc. v. Superior Court, 91 Ariz. 163, 370 P.2d 652 (1962), it stated:

" 'Section 12–1112 sets forth prerequisites which must be shown before the power of eminent domain may be exercised under the general eminent domain statutes. Where the exercise of eminent domain powers is authorized under a specific statute which has been complied with, it is not necessary to comply with the general statute.' p. 171, 370 P.2d p. 657." (108 Ariz. at 300, 497 P.2d at 59).

In my opinion, § 2–306 is a special statute in which the "necessity" of taking for airport purposes is legislatively delegated to the city. The general provision regarding "necessity" in § 12–1112, therefore, is inapplicable to an exercise of power under § 2–306, i. e., a taking for airport purposes.

For the above reasons, I must dissent from the majority's conclusion that the taking in this case was not "necessary" as a matter of law. Consequently, I would reverse the summary judgment granted and remand the matter for an evidentiary hearing on the issue of "necessity".