Flora BOWLING, Dan Bowling and Eloise N. Bowling, his wife, Calvin P. Bowling and Edna C. Bowling, his wife, Plaintiffs in Error,

v.

The STATE of Oklahoma ex rel. the BOARD OF COUNTY COMMISSIONERS OF GRANT COUNTY, Defendants in Error.

No. 40295.

Supreme Court of Oklahoma.

May 16, 1967.

Stagner, Alpern & Powers, Oklahoma City, Drennan & Drennan, Medford, R. L. Stimpert, Blackwell, for plaintiffs in error.

D. W. Falkenberg, Medford, for defendant in error.

WILLIAMS, Justice.

This appeal is from the order of the District Court of Grant County overruling objections of plaintiffs in error (defendants below) to the report of commissioners in a condemnation proceeding wherein The Board of County Commissioners of Grant County (as relator, the State of Oklahoma being plaintiff below) sought to appropriate a .15 acre parcel of land at the northeast corner of the northeast quarter of section 23, T. 26 N., R. 6 W., I. M., and a 50 feet-wide strip running diagonally from north to south through said northeast quarter. The appropriation of these two tracts was sought in connection with raising, broadening and draining the county road located between said section 23 and the section lying immediately to the north, section 14.

The parties will be referred to herein as they appeared below.

As the action from which the present appeal arose is the fourth in a series of actions brought by Grant County as relator to condemn portions of defendants' property, and understanding of the questions presented herein requires a brief recitation of the various condemnation proceedings.

In 1956, relator instituted proceedings against the defendants in case No. 7873, District Court of Grant County, seeking to condemn a strip eight feet wide along the north side of the north half of the above described section 23. Commissioners were appointed, and they returned a report fixing the amount of compensation for such property at $3796.33. This report was confirmed by the district judge, but the compensation fixed by such report was never deposited with the court.

In 1957, relator again filed, in case No. 7985, proceedings against defendants seeking to condemn a strip eight feet wide along the north side of the north half of section 23. In this action, the report of the commissioners fixed the amount of compensation for such property at $4750.00. Again, although the commissioners' report was confirmed, the compensation fixed thereby was not deposited with the court.

Although not clear from the record, relator was apparently displeased with the compensation fixed by the commissioners in both of the above condemnation actions.

In September, 1961, relator instituted in case No. 8396, the third action against defendants and sought to appropriate a strip seven feet wide along the north side of section 23, and, in addition thereto, also sought to appropriate a strip 25 feet wide running diagonally from north to south through the northeast quarter of section 23.

Subsequent to the filing of this third action, all parties thereto entered into an agreement purporting to settle all controversies arising out of said condemnation proceeding. By this agreement, among other things, relator agreed to divert to the west certain surface waters draining from the lands located north of defendants' property. In consideration, defendants agreed to convey to relator a strip of land

seven feet wide running east and west on the north side of section 23. This strip of land was an easement for road purposes. It was further agreed that until relator had diverted the surface waters, defendants could maintain, along the north side of section 23, certain dikes they had previously constructed. The agreement was approved by relator's engineer, defendants' engineer, and the District Judge of Grant County, and the condemnation proceeding in case No. 8396 was dismissed.

In April, 1962, approximately six months after the above described agreement terminating the third condemnation proceeding was entered into by the parties, relator commenced its fourth condemnation proceeding pertaining to property owned by defendants in section 23. In this proceeding, relator sought to condemn a strip fifty feet wide running diagonally from north to south through the northeast quarter of section 23 and a small tract, alleged to contain .15 acre, at the northeast corner of said northeast quarter. It is this proceeding from which the present appeal arises.

In the proceeding below, defendants filed their written objections to the appointment of commissioners, which objections were overruled, and commissioners were appointed and their report was returned. Defendants then filed their written objections and exceptions to the report of commissioners, and alleged therein that relator commenced this action without first negotiating with defendants as to the just compensation for the property proposed to be taken by condemnation; that the proposed acquisition of defendants' property, allegedly for public purposes, is in fact an acquisition for private purposes; that there is no public necessity for taking defendants' property; that the taking of their lands is not required by any official plans or specifications; that the agreement entered into in the third condemnation proceeding to which reference has been made herein settled and adjudicated all matters in this present action and as a result thereof

relator is estopped to maintain this action; and, that defendants, having conveyed without consideration certain lands for road purposes, had complied with said agreement and that said question of public necessity is therefore res judicata.

In its reply and response to defendants' objections and exceptions to report of commissioners, relator alleged that the project pertaining to the county road running between sections 23 and 14 had been designated as a federal farm to market road project; that relator had acquired, with the exception of defendants' lands, all property needed to complete the road project; that it had been unsuccessful in its attempts to obtain defendants' property by negotiation; that the above described fifty feet strip was needed to carry water along the natural flow away from the road and across defendants' lands and connecting to a natural drainage ditch located to the south; that if said drainage right of way across defendants' land is not obtained, surface waters will flood and destroy the proposed road bed; that the proposed drainage right of way must be obtained if the road project is to receive federal funds for its completion; that the proposed road project is necessary as it is a school bus and rural mail route and will connect Federal Highway No. 81 with another proposed county farm to market road; that no previous adjudication of the matters in the present case has been made and the defense of estoppel is not available to defendants; and, that the above described agreement and the previous condemnation proceedings covered different tracts, in whole or in part, and are not involved herein.

At trial the court ruled that relator's petition, to which was attached a copy of the board of commissioners' resolution determining that it was to the best interest of Grant County that such board proceed with the road project herein and that condemnation proceedings be instituted, established a prima facie case and shifted the burden of proof to defendants. Defendants' de-

murrer on the ground that relator had failed to establish any necessity for the proposed taking was overruled.

Mr. Dan Bowling, one of the defendants herein, testified that he had lived in section 23 approximately forty-five years; that he was familiar with the drainage of surface waters in sections 23 and 14; that, prior to 1940, the surface waters in section 14 had drained to the southeast corner of such section; that in the past, when such surface waters drained toward defendants' property, the witness's father had plowed a ridge along the north side of section 23 to prevent any such surface water from draining across said property; that other surface waters from lands north of defendants', which water had formerly drained to the south and west of defendants' property, had been diverted to drain along the north side of such property; that to prevent the drainage of such water across defendants' property, defendants had maintained the ridge across the north side of section 23; that a ditch in the southeast quarter of section 23, which quarter section was owned by Grant County, drained surface water to the south; that to the best of their ability, defendants had complied with the terms of the agreement settling the condemnation proceedings in case No. 8396; and, that defendants had conveyed to Grant County a strip seven feet wide and had constructed a new fence along the north side of section 23.

V. E. Williamson, defendants' engineer, testified that there were drainage problems in the general area surrounding defendants' property involved herein; that the above referred to agreement settling case No. 8396 could not be fully complied with; that such agreement was made "so that the Bowlings would get about as much water as they should normally have on their land in the absence of any improper diversion up to the north"; that the agreement "was a compromise to get the road built and take care of the drainage as it was originally before there was any diversion." He added "like I said, they will have trouble

in there. They will have trouble there perhaps no matter what they do." The witness continued by testifying that the surface water collecting along the county road between sections 23 and 14 could not escape to Pond Creek, located just to the east of such sections, as rapidly as previously because dikes had been constructed on Pond Creek to prevent water escaping therefrom into the town of Jefferson.

In rebuttal, relator submitted testimony of effect that the normal drainage pattern of surface waters from lands north of defendants' property was to the south and east across section 23; that prior to the construction of a drainage ditch on the southeast quarter of section 23 (owned by Grant County), surface waters collected on such southeast quarter, forming a lake that extended onto the defendants' property in the northeast quarter of such section; that unless the surface waters were allowed to drain across defendants' property and into the drainage ditch on the southeast quarter of section 23, such water would collect along the county road located between sections 23 and 14 and would destroy the proposed road bed; and, that if this drainage problem was not solved, federal funds available for the construction of the farm to market road project would be withheld.

From the above pleadings and evidence, the trial judge found for relator. Further, in his oral pronouncements at the conclusion of the trial, the trial judge commented, but apparently without so holding, that it was his opinion that the county was liable to defendants for the seven feet wide easement previously conveyed to relator pursuant to the agreement settling case No. 8396 and that defendants could recover for such easement in either a reverse condemnation suit or in the present action.

From the judgment of the trial court, defendants appeal.

■ In their first proposition for reversal, defendants argue that relator has not shown a public necessity for the taking of the property sought to be appropriated herein. We do not agree.

In Delfeld v. City of Tulsa, 191 Okl. 541, 131 P.2d 754, 143 A.L.R. 1032, we held that a condemnor's decision, as shown by a resolution declaring the necessity for appropriating land, establishes a prima facie case of necessity which shifts to the defendant the burden of proving that such taking is not for a public use. In Seba v. Independent School Dist. No. 3, 208 Okl. 83, 253 P.2d 559, 561, we stated:

"The ordinary rule in condemnation cases is that while the particular property sought to be condemned must be necessary for the proposed project, the condemnor's decision as to the necessity for taking particular property will not be disturbed in the absence of fraud, bad faith, or abuse of discretion. * * *"

In Burke v. Oklahoma City, Okl., 350 P. 2d 264, 267, we stated:

" * * * In Hennen v. State ex rel. Short, 131 Okl. 29, 267 P. 636, the State sought to condemn additional land to make changes in an existing highway. The defendants, over whose land the highway extended, and wherein the state sought to take additional land for the proposed change contended the state could not take additional property as it had already designated that which was necessary. In holding the state could condemn additional property this court said the necessity, utility or expediency of the exercise of the right of eminent domain is vested in the legislature, or the legislature may delegate that power and a court has no power to interfere with the *reasonable exercise thereof.*" (Emphasis added.)

 In the instant case, relator as shown by the evidence, established a prima facie case. In our opinion, defendants produced no evidence indicating that fraud, bad faith, or abuse of discretion was present in relator's decision declaring the necessity for the proposed appropriation or that relator's exercise of the right of eminent domain herein was unreasonable. Rather, the evidence tends to establish that (unless the situation is remedied) surface waters will collect along the county roadway between sections 23 and 14 and that such waters will destroy the road bed. Although there may be some conflicting evidence, there is ample testimony, including that of defendant Dan Bowling and of defendants' engineer, from which could hardly be drawn any conclusion other than that the normal drainage pattern in the area involved herein is from north to south and across defendants' property in the northeast quarter of section 23.

 In their second proposition for reversal, defendants argue that relator is estopped, by the agreement and judgment in case No. 8396, to assert that a public necessity exists and to maintain the action herein. In our opinion, this proposition has been previously answered by this Court in Burke v. Oklahoma City, Okl., 350 P.2d 264. In Burke, as in the case at bar, defendants argued that an agreement settling an earlier condemnation proceeding relating to much the same property, determined the issue of necessity for taking in the subsequent condemnation proceeding, and, further, that by such agreement, the condemnor was estopped to maintain the subsequent condemnation proceeding. In answering these contentions, we stated, at p. 268:

"We conclude and hold that the right of eminent domain is inalienable, cannot be surrendered in whole or in part and cannot be contracted away and res adjudicata and estoppel do not constitute defenses to the causes of action set forth in the petition to condemn as filed by the City herein."

 Defendants further contend of effect that because of the confused situation arising from this and the three previous condemnation proceedings, and because of their reliance on the settlement agreement in case No. 8396 and their conveyance to plaintiff of the seven feet strip along the north side of section 23, this Court should remand this cause and require plaintiff to condemn in one action all lands owned by defendants necessary for the construction

of the farm to market road. With this contention we agree.

In the case at bar, relator apparently intends to accept the benefits of the prior agreement attempting to settle case No. 8396, but also just as apparently argues that such compromise agreement is unenforceable in its application to relator. In our opinion, even though the agreement was not binding upon relator (as we have stated hereinabove), the seven feet wide strip received by relator under the terms of such agreement must be reconveyed to defendants, or if relator chooses to retain such property, defendants must be paid consideration for it. As stated in Nichols, Eminent Domain, Vol. 1, at pp. 23–24:

" * * * When, however, a tract of land has been donated to a city in consideration of a promise that no more will be condemned, if the promise is violated the donated land must be returned or paid for; when the contract is repudiated the consideration cannot be kept."

It is true that in Burke v. Oklahoma City, supra, we held that the trial court did not err in dismissing the cross-petition of defendants seeking damages for the property deeded and the easement granted pursuant to a compromise agreement settling an earlier condemnation proceeding. In *Burke,* we stated, at 350 P.2d 269–270:

" * * * However, defendants are not entitled to litigate in this action alleged damages for property which was the subject matter of a previous condemnation proceeding which is not either directly or indirectly involved in the instant case and which the defendants have no interest in. If defendants are entitled to seek damages by virtue of the previous proceedings, their claim can only be litigated in a separate action."

However, in *Burke,* sixteen years had elapsed between the compromise agreement settling the first condemnation action and the filing of the second condemnation action. In the instant case, four condemnation proceedings were filed against defendants within a period of six years. In addition, the agreement attempting to settle the third of such proceedings was entered into by the parties only six months prior to the filing of the fourth condemnation proceeding. The object of all four proceedings (including the present one) was to obtain the property necessary for the completion of a single project, the improvement of a county road.

In our opinion, under the circumstances of this action where several condemnation proceedings were filed and dismissed with such continuity of effort that they may be characterized as one condemnation proceeding and where condemnor has not changed position to its prejudice prior to the initiation of the last condemnation proceeding, relator may not retain the seven feet strip received by it without consideration, but should amend its petition on remand to condemn in the one action all land necessary to the completion of the road project. Any other holding by this Court would result in a multiplicity of actions and in a taking by piece meal of defendants' property. Under these latter conditions it would be difficult, if not impossible, for commissioners or a jury to determine the fair and just compensation for the property condemned.

For these reasons, the judgment below is affirmed in part, reversed in part, and the cause is remanded to the trial court with directions to proceed in a manner not inconsistent with the views expressed herein.

All Justices concur.