ROCHESTER BUSINESS INSTITUTE, INC., et al., Respondents, *v.* CITY OF ROCHESTER, Appellant.

Fourth Department, February 24, 1966.

*John R. Garrity, Corporation Counsel,* for appellant.

*Jacob Gitelman* and *Samuel Levy* for respondents.

*Per Curiam.* Defendant City of Rochester appeals from a judgment which declared that section 35 of the General City Law, the Official Map or Plan of the City of Rochester and the ordinances establishing it are unconstitutional and void to the extent that their application prevents the plaintiffs Rochester Business Institute, Inc. (hereinafter referred to as R. B. I.) and Franklin-Andrews Corporation (hereinafter referred to as Franklin-Andrews) from constructing a building within the area of the proposed Court Street widening. The judgment further directed the city, upon presentation of plans for the building described in the complaint, which otherwise comply with the ordinances and regulations, to issue to the plaintiffs the necessary permits for construction.

Plaintiff R. B. I. in 1962 leased from plaintiff Franklin-Andrews property located on the south side of Court Street extending from Chestnut to Cortland Streets in the City of Rochester, which property adjoined a parcel owned by R. B. I. to the south, the combined plot having an area of approximately 40,000 square feet. The lease provided for a term of 50 years, annual net rental of $15,000 and included a five-year option to purchase for $300,000.

In 1930, pursuant to article 3 of the General City Law (Cons. Laws, ch. 21), the Rochester City Council adopted an ordinance (No. 2174), commonly known as the Bartholomew Major Street Plan, which provided for the widening of certain streets and the future construction of proposed streets. The Official Map

then adopted provided for a 30-foot widening of the south side of Court Street, and particularly covered the Franklin-Andrews property leased to R. B. I. and other properties in the vicinity. Notwithstanding this ordinance, R. B. I. on July 10, 1963 filed plans with the City Building Bureau for the proposed construction of a 10-story building fronting on Court Street. These plans disregarded the 30-foot setback requirement and a permit was refused. Plaintiffs appealed to the Zoning Board of Appeals, which on September 26 approved the application on the specific condition that the building should be set back 14 feet from the line of Court Street. This reduction of the 30-foot setback was the recognition by the Zoning Board of an ordinance which had been introduced in the City Council on September 10, upon the recommendation of the Planning Commission, which amended the 1930 ordinance to make it more comprehensive and current. The adoption of this ordinance on October 8 amended the 1930 " official map or plan, by striking therefrom certain proposed changes and substituting therefor proposals known as central business district official street map ". This ordinance updated the original plan to make it more appropriate and responsive to contemporary conditions of traffic due to changes which had occurred in the 33 years since its adoption. It specifically provided for a 14-foot widening of Court Street from Clinton Avenue South to Broadway, which area included the Franklin-Andrews property leased to R. B. I. It should be noted here that Court Street west of Clinton Avenue South is and has been 64 feet wide and that commencing at Clinton Avenue South and proceeding east to Broadway the width of Court Street is reduced to 50 feet. Plaintiffs contend that the city's denial of their right to construct the R. B. I. building on the 14 feet of the proposed bed of Court Street violates the Constitutions of the United States and the State of New York for it constitutes a taking of their property without due process and without just compensation.

Section 35 of the General City Law provides that no permit shall be issued to build in the mapped bed of a proposed street as laid out on the official map or plan of a city, such as provided for in the Bartholomew Major Street Plan. This legislation recognized that there may be instances where an exception should be made for it provided: " that if the land within such mapped street or highway is not yielding a fair return on its value to the owner, the board of appeals or other similar board in any city which has established such a board having power to make variances or exception in zoning regulations shall have power in a specific case — to grant a permit for a building in

such street or highway which will as little as practicable increase the cost of opening such street or highway, or tend to cause a change of such official map or plan, and such board may impose reasonable requirements as a condition of granting such permit, which requirements shall inure to the benefit of the city.'' The question is whether this statute can be sustained on the facts in this record as a valid exercise of the police power on the ground that it promotes the general welfare, or whether it has been so applied as to render it unconstitutional. The essence of the testimony produced by the parties was directed toward the all important question of whether or not R. B. I. would suffer substantial damage if it were compelled to set back its proposed building 14 feet. Two sets of plans were introduced into evidence — the so-called original plan in which was incorporated the use of roller rink structure owned by R. B. I. and destroyed by fire before trial and a new plan, made after the fire, which included the setback and a redesigned building where the roller rink formerly stood. R. B. I. planned to construct a 10-story building with a school for its own use and offices which it would rent, the complex to cost approximately $2,500,000. The inability to use the 14-foot strip resulted in a 7.1% land loss to the combined parcels owned by both plaintiffs. R. B. I.'s architect testified that in order to have the same amount of floor space without the use of the 14-foot strip it would require '' about one or two more stories on the tower '' and would increase the cost '' around five or six per cent more ''. The trial court found that the setback requirement would add substantially more to the construction and maintenance cost of the building and would afford substantially less rental income. Applying the plaintiffs' estimate of 6%, the construction cost would increase $150,000, but there would be no diminution in rental income for the change in plans would result in the same amount of office space as originally planned. It should be noted that plaintiffs' plans provided for a 10-foot setback from the property line with a 4-foot overhang starting with the second floor. Thus, if the building were moved back but 4 more feet, the building line would comply with the 14-foot setback and there would be a resulting loss of only 4 feet. This would, as the trial court found, produce some changes in the plans, such as the elimination of a 30-foot courtyard between the buildings and others, but would not substantially change the appearance or utility of the structure.

Assuming, however, that the setback requirement would cause some injury to the plaintiffs, we are confronted with the ques-

tion of whether this injury is of such substantial character as to constitute a taking of plaintiffs' property without just compensation. This very same question, involving an attack on the constitutionality of section 35 of the General City Law and the Bartholomew Plan, was presented for adjudication 30 years ago in *Headley* v. *City of Rochester* (272 N. Y. 197). In discussing the background and reasons for section 35 of the General City Law the court established guidelines (p. 201): "The mere adoption of a general plan or map showing streets and parks to be laid out or widened in the future, without acquisition by the city of title to the land in the bed of the street, can be of little benefit to the public if the development of the land abutting upon and in the bed of the proposed streets proceeds in a haphazard way, without taking into account the general plan adopted and, especially, if permanent buildings are erected on the land in the bed of the proposed street which would hamper its acquisition or use for its intended purpose. So long as the owners of parcels of land which lie partly in the bed of streets shown on such a map are free to place permanent buildings in the bed of a proposed street and to provide private ways and approaches which have no relation to the proposed system of public streets, the integrity of the plan may be destroyed by the haphazard or even malicious development of one parcel or tract to the injury of other owners who may have developed their own tracts in a manner which conforms to the general map or plan." The court noted that the basic conflict is this: if the city were compelled to acquire title now and pay for lands within the mapped streets, its ability to plan now for the future would become illusory. Alternatively, if the land were incumbered and left in private ownership without just compensation and the incumbrance restricted its use and substantially diminished its value, this might be beyond the power of the State or municipality. To resolve this conflict section 35 was enacted.

It is clear that "the issue as to whether a particular governmental restriction amounted to a constitutional taking * * * [is] a question properly turning upon the particular circumstances of each case" (*United States* v. *Central Eureka Min. Co.,* 357 U. S. 155, 168) and requires balancing the interests between the general public welfare and the extent of the diminution of the property value. Thus, constitutionality of the statute depends upon the substantiality of damage as compared with the effect upon public purpose and the advancement of the general welfare (*Pennsylvania Coal Co.* v. *Mahon,* 260 U. S.

393; *Symonds* v. *Bucklin,* 197 F. Supp. 682; *Matter of Wulfsohn* v. *Burden,* 241 N. Y. 288; *State ex rel. Miller* v. *Manders,* 2 Wis. 2d 365). If the impact of the planning map produces such substantial damage as to render the property useless for any reasonable purpose, there is an unconstitutional taking (*Arverne Bay Constr. Co.* v. *Thatcher,* 278 N. Y. 222, 232; *Forster* v. *Scott,* 136 N. Y. 577; *Rand* v. *City of New York,* 3 Misc 2d 769; *Roer Constr. Corp.* v. *City of New Rochelle,* 207 Misc. 46). On the other hand, if the restriction placed upon the property is necessary to promote the general welfare and does not deprive the owner of use for a reasonable purpose, then the attack upon section 35 must fail. There is little doubt that an objective which seeks to achieve better city planning falls fully within the concept of promoting the general welfare (1 Metzenbaum, Law of Zoning [2d ed.], p. 484). The trial court found that "the proposed widening of Court Street is presently desirable and may eventually become necessary". This was based upon the physical fact of the narrowing of Court Street from 64 feet to 50 feet at one of the busiest and most heavily travelled intersections in the business district and immediately at the point of the present construction of a 30-story office building, the tallest structure in the State outside of Metropolitan New York City. The record fully supports not only the desirability but the vital need for street widening at this juncture.

The plaintiffs' "Compensation for such interference with and restriction in the use of [their] property is [not only] found in the share that the owner enjoys in the common benefit secured to all" (*People ex rel. Wineburgh Adv. Co.* v. *Murphy,* 195 N. Y. 126, 131) but also in the case at bar in the fact that reasonable and profitable use of their property, in the form of the proposed building, can be made. The increase of 6% in the construction cost, which will give plaintiff R. B. I. the full use it intends to make of the property, with little or no loss in rental income, is truly trivial damage when compared to the great injury to the general welfare which will result if the city is prevented from planning for this essential improvement of traffic conditions. If the minimal damage to plaintiffs involved here by enforcement of the setback restriction renders the specific application of the Rochester Plan unconstitutional, then the public is in grave danger of being deprived of the very valuable tool of city planning for the future. Furthermore, the negotiations of plaintiffs' attorney with the City Manager in an effort to sell the 14 feet to the city negate any reasonable claim that plaintiffs cannot make profitable use of the parcel without building in the reserved portion.

The city's position is supported by the test asserted by Judge VAN VOORHIS in *Vangellow* v. *City of Rochester* (190 Misc. 128, 134) in this significant statement: "Nevertheless, provided that it can be accomplished without materially diminishing the value or usefulness of the premises, constitutional law does not prevent the city, in the exercise of the police power pursuant to the enabling act, from requiring that the new building be erected in such manner as to minimize the damage thereto which will result when and if, in the future, the city shall decide to widen West Main Street."

We recognize that the ordinance and statute cannot be used as a substitute for condemnation proceedings to defeat payment of just compensation by depressing values and thus reducing the amount to be paid for the 14 feet when actually taken. It requires no clairvoyance or great real property expertise to deduce from this record that the delay of the city in appropriating this property will result in a greater cost to it of the land. The erection of the Xerox complex almost directly across the street from the subject property should greatly enhance land values in the vicinity.

As in all matters dealing with ordinances and statutes, the court must so construe the official map law as to sustain its constitutionality in a given situation if it is possible to do so. This principle of law is well stated in the recent case of *De Sena* v. *Gulde* (24 A D 2d 165, 169): "When a municipal legislative body enacts an ordinance, a presumption of validity attaches to its resolution (*Rodgers* v. *Village of Tarrytown*, 302 N. Y. 115; *Shepard* v. *Village of Skaneateles*, 300 N. Y. 115). The presumption of validity has the effect of (1) imposing the burden of proof on the party questioning the ordinance; and (2) sustaining the ordinance if the propriety of its enactment is fairly debatable. The content of the burden on the assailant is sometimes said to extend further than a mere preponderance of the evidence to proof beyond a reasonable doubt (*Wiggins* v. *Town of Somers*, 4 N Y 2d 215; but, see, *Thomas* v. *Town of Bedford*, 29 Misc 2d 861, 866, affd. 15 A D 2d 573, affd. 11 N Y 2d 428). Still, the presumption is not irrebuttable (*Arverne Bay Constr. Co.* v. *Thatcher*, 278 N. Y. 222), and perhaps we may best rationalize the presumption as a reminder of the force of legislative judgment which must be supported by the courts if there is 'any state of facts either known or which could reasonably be assumed' on which the ordinance could be based (*United States* v. *Carolene Prods. Co.*, 304 U. S. 144, 154; cf. *Town of Islip* v. *Summers Coal & Lbr. Co.*, 257 N. Y. 167)." In our judgment, plaintiffs' evidence fails to rebut the presump-

tion of constitutionality as applied to the land in question and the city's requirement of a 14-foot setback is a valid exercise of the police power and consonant with sound city planning.

The judgment should be reversed upon the law and the facts and defendant city is entitled to judgment declaring that section 35 of the General City Law, the Official Map and Plan of the City of Rochester and the ordinances establishing it are valid and constitutional; all of which shall be without prejudice to plaintiffs, if so advised, to make a new application to the Zoning Board of Appeals for a permit to construct a building which complies with the ordinances of the City of Rochester.

WILLIAMS P. J., GOLDMAN, HENRY, DEL VECCHIO and MARSH, JJ., concur.

Judgment unanimously reversed, on the law and facts, without costs of this appeal to either party and declaratory judgment directed in favor of defendant in accordance with the opinion.