**Roland E. HILL and Carolyn H. Hill et al., Plaintiffs,**

**v.**

**Claude S. BRINEGAR, Secretary of Transportation of the United States of America, and Clifton E. Morris, Secretary of the Department of Highways and Transportation of the State of Delaware, et al., Defendants.**

**Civ. A. No. 4499.**

United States District Court, D. Delaware, Wilmington Division.

Feb. 28, 1974.

Thomas Herlihy, Jr., and Morris Cohen, Wilmington, Del., for plaintiffs.

Bruce L. Thall, Asst. U. S. Atty., Wilmington, Del., for defendant Brinegar.

Johanna D. Drooz Yoffie, Deputy Atty. Gen., Wilmington, Del., for defendant Morris.

Joseph M. Bernstein, Asst. Atty. for New Castle County, Wilmington, Del., for defendant Peterson.

Before VAN DUSEN, Circuit Judge, LATCHUM, Chief District Judge, and STAPLETON, District Judge.

## OPINION

PER CURIAM:

As part of a broad attack on the proposed construction of a highway in New Castle County, Delaware, plaintiffs have challenged the constitutionality of a recently enacted state statute. A three-judge court was convened pursuant to 28 U.S.C. §§ 2281, 2284 to consider this element of their complaint.

Plaintiffs are the Christine Manor Civic Association, a non-profit neighborhood association, and individual residents of Christine Manor, an unincorporated residential area of New Castle County, Delaware. The gist of their claim is that the statute in issue, 57 Del.L.Ch. 754, operates to take their property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Section 1983 of Title 42 of the United States Code.

Defendants relevant to the issues presently before us are various state officials responsible for the enforcement of the challenged statute. They have moved for summary judgment and we now address that motion. Jurisdiction

exists under 28 U.S.C. §§ 1343, 2201 and 2281.

Generally, the challenged statute establishes a procedure for the creation of a "Future Right-of-Way Map—Final" which will set forth the state's anticipated future needs for major highway construction ("corridor routes") and which will be used by local governmental bodies in determining future land use policies. Subsection (10) is the prime source of plaintiffs' discomfort. It provides:

> (10) Land so designated under subparagraph (9) above upon the "Future Right-of-Way Map—Final" shall thereafter, and so long as it remains upon said map, be set aside for highway purposes, except that the Department may, at its discretion, authorize temporary use of such land for nonhighway purposes which will not interfere with highway planning or construction. Department authorization for temporary use of land shall be required only in those instances in which such use, in the opinion of the Department, would increase the cost to the State in the future procurement of such land for highway purposes. Nothing in this section shall preclude the owner or owners of land set aside for highway purposes in accordance with the provisions of this section from utilizing said land as they may desire, prior to procurement by the State, provided such utilization by the land does not increase the potential cost to the State at the future date for negotiations for procurement.

The challenged statute, in addition to creating a procedure for the designation of future rights-of-way for corridor routes, amends several sections of the Delaware Code which deal with the issuance of building permits. Those amendments included the insertion into Title 9 of the Code of the following provisions:

> (aa) Except in instances in which the State Highway Department, or its successor has indicated authorization for temporary use of land set aside for future right-of-way needs, as provided in Section 147, Title 17, Delaware Code, no building permit shall be issued for the erection of any building, or for the construction of any improvement, or structure on any part of any land which lies or is located within the lines of any land designated and set aside for future highway right-of-way needs as appears on the State Highway Department's Future Right-of-Way Map—Final except as hereinafter provided in subparagraph (c).

> \* \* \* \* \* \*

> (c) A building permit, otherwise issuable except for subparagraph (aa) above, shall be issued notwithstanding the provisions of subparagraph (aa) unless the State Highway Department, after being given written notice thereof by the Commission shall (1) within 60 days of receipt of such notice, file with the Commission a declaration (i) that the issuance of said permit will be detrimental to future highway planning and construction; and (ii) that the land described in said permit application is needed for future highway purposes; and (2) within 180 days of the giving of such notice, institute condemnation proceedings under Chapter 61, Title 10, Delaware Code, to acquire all of the land described in said building permit application as may be located within said future highway right-of-way.

9 Del.C. § 3005.

A study of the Act leaves one with considerable uncertainty about the legislative intent. It puts the matter generously to say the draftsmanship is imperfect. Most disturbing for present purposes is the failure to use consistent terminology in delineating the scope of the authority of the State Highway Department and the standards for the exercise of its discretion. Giving content and meaning to the concept of "temporary

use . . . for non-highway purposes, which will not interfere with highway planning or construction" in the convoluted context of subsection (10), for example, is a difficult task.* Moreover, while the building permit amendments clearly seem to evidence a legislative intent that land be condemned and paid for if a permit is not issued, those amendments, when read together with existing statutes upon which they were engrafted, would literally seem to be limited solely to land subdivided since 1965. We confess, however, to an inability to perceive any rational legislative scheme which this distinction might serve, and are, therefore, reticent to ascribe that meaning to the Act.

The difficulty of an interpretive task is, of course, no excuse for avoiding it. We sit, however, as a federal court asked to strike down as violative of the United States Constitution a state legislative scheme in which the State of Delaware has a substantial interest. Given the character of the legislative expression, we believe the courts of Delaware should be given the opportunity to decipher the legislative intent. The statute is susceptible of a number of constructions and we believe the questions presented under the federal constitution may be substantially modified or even avoided if this opportunity is afforded.[1]

Thus, we are asked to pass upon the constitutionality of a recently enacted state statute; that statute has not yet been construed by any Delaware court, and presents unclear questions of state law. In attempting to facilitate the planning and construction of major highways, that statute deals with issues of pressing concern to the State of Delaware. See Martin v. Creasy, 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186 (1959); cf. Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970). In these circumstances, we think it appropriate to stay our hand in order that the unclear issues of state law presented here may be resolved in the first instance by the courts of the State of Delaware. Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Fornaris v. Ridge Tool Co., 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970); King-Smith v. Aaron, 455 F.2d 378 (3rd Cir. 1972); Partnow v. Moran, 359 F.Supp. 519 (D.Del.1973) (three-judge court).

As the Supreme Court has recently noted:

The paradigm case for abstention arises when the challenged state statute is susceptible of "a construction by the state courts that would avoid or modify the constitutional question. [citing cases] More fully, we have explained:

Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tenatative decisions on questions of state law, and premature constitutional adjudication. * * * Harman v. Forssenius, 380 U.S. 528, 534 [85 S.Ct. 1177, 14 L.Ed.2d 50] (1965).

Lake Carriers Association v. MacMullan, 406 U.S. 498, 510–511, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972).

Plaintiffs' attack on the Delaware statute fits comfortably within this de-

---

* The record reveals no administrative interpretation which is at all helpful. The State Highway Department has acted favorably to the landowner on every application which has been made under subsection (10). The only plaintiff who has filed such an application has been granted the permission sought.

1. Given the legislative intention reflected in the building permit amendments, it is conceivable to us, for example, that the Supreme Court of Delaware might imply a duty of compensation with respect to land not subdivided prior to 1965. The Supreme Court of New Jersey has found such an implied duty in a similar context. Lomarch Corp. v. Mayor of Englewood, 51 N.J. 108, 237 A.2d 881 (1968).

scription of the "paradigm case" in which a postponement of federal court action is appropriate. Moreover, we believe there is an additional consideration which weighs in favor of abstention. Plaintiffs challenge the relevant statute as invalid under the state constitutional law doctrines announced in Kittinger v. Rossman, 12 Del.Ch. 276, 122 A. 388 (1921) and State v. 0.62033 Acres of Land, 110 A.2d 1 (Del.Super.1954) aff'd, 112 A.2d 857 (Del.Sup.1955). If the statute is struck down under the doctrines of these cases, resolution of the federal constitutional issue would, of course, be avoided. We have been cautioned that a federal court should abstain from deciding the constitutionality of a state statute if that statute is attacked on alternative state law grounds and decision of the state law question might obviate the need for decision of the federal question. See Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L. Ed.2d 196 (1971); Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970). Manifestly this is such a case.

In deciding to abstain we attempt to accommodate the competing demands of our federalist system of dual sovereignty with the plaintiffs' legitimate need for an available forum within which to press their claims. We seek further to insure that we address the important issue of the constitutionality of 57 Del.L. Ch. 754 neither prematurely nor in a context clouded by unclear questions of state law. In so doing, we do not cast the plaintiffs adrift. They may now pursue their remedy in the appropriate court of the State of Delaware.[2] Moreover, we shall retain jurisdiction over this matter for eventual resolution if that course becomes necessary. See England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S. Ct. 461, 11 L.Ed.2d 440 (1964). Other claims in the complaint, that is, those not related to the challenge to this state statute, may, meanwhile, proceed here.

Submit order.