**Albert L. LACKMAN et al., Plaintiffs,**

**v.**

**Clifford E. HALL, Secretary of Highways and Transportation of the State of Delaware, et al., Defendants.**

Court of Chancery of Delaware, New Castle.

Submitted Feb. 13, 1976.

Decided July 15, 1976.

Thomas Herlihy, Jr., and Morris Cohen, of Herlihy & Herlihy, Wilmington, for plaintiffs.

Malcolm S. Cobin and David J. Haley, Dept. of Justice, Wilmington, for defendants.

BROWN, Vice Chancellor.

This action is one brought for declaratory judgment pursuant to 10 Del.C. § 6501. Plaintiffs are a number of individual prop-

erty owners and residents of a development known as Christine Manor in New Castle County, Delaware. They are joined by the Christine Manor Civic Association, a Delaware corporation. Defendants are officials of the State Division of Highways and Transportation, referred to generally hereafter as the "Highway Department." The suit concerns a proposed highway facility known as the Newark Beltway, or Newark Ring Arterial, which in part would run through Christine Manor and across property of the individual plaintiffs.

Cross-motions for summary judgment presently before the Court have placed in issue the constitutionality of 57 Del.L. Ch. 754 as well as the extent of the application of such legislation if it is constitutional and the effectiveness of certain action taken by the State Department of Highways and Transportation purportedly under the authorization of the enactment. Suit to test this legislation was initially filed in the United States District Court for the district of Delaware but, under the doctrine of federal abstention, a three-judge panel refrained from any determination until the matter was first passed upon by the courts of this State. See *Hill v. Brinegar*, D.Del., 371 F.Supp. 1166 (1974).

In its effect 57 Del.L. Ch. 754 amended 17 Del.C. Ch. 1, pertaining to State high-ways, as well as three separate chapters of Title 9 of the Delaware Code relating to the issuance of building permits by each of the three counties of this State. While the entire Act is too lengthy for meaningful reproduction here, it may be summarized as an enactment which purports to authorize the Department, subject to specified procedures, to establish in advance anticipated future needs for certain highway rights-of-way and to file a plan of such proposed future routes as a public record so as to thereafter exercise supervision and control over construction and land improvement within the future routes and to thereby keep the eventual acquisition costs to the State to a minimum when, and if, the land within the routes is eventually taken for highway construction purposes.[1] In short, it authorizes the establishment of prospective highway right-of-way areas which, for the purpose of the legislation, are designated as "Corridor Routes."[2]

As recodified the portion of the Act now found at 17 Del.C. § 145 permits the Department in conjunction with the State Planning Office, to determine, from time to time, "the State's anticipated future needs for rights-of-way, based upon a long range comprehensive plan, for state highways not in existence at the time of such determination. . . ." § 145(b)–(d). Thereafter the Department must make a

---

1. The preamble to 57 Del.C. Ch. 754 expresses the announced purpose of the legislation as follows:
   "WHEREAS, the right-of-way requirements involved in the long range plans for highway construction or reconstruction cannot be determined precisely prior to the approval of alignment of such projects; and
   "WHEREAS, land development on prospective rights-of-way, prior to alignment determination, may adversely affect the procurement of needed land; and
   "WHEREAS, inability to secure required rights-of-way may result in excessive costs for the construction or reconstruction of certain highways throughout the State; and
   "WHEREAS, the public disclosure of limits preserved for future right-of-way requirements would provide for orderly plan-

ning and private development of land adjacent to highways of this State;
   "NOW, THEREFORE,
   "Be it enacted by the General Assembly of the State of Delaware:"

2. Although not defined in the Act, "corridor route" is defined in 29 Del.C. § 8402 as follows:
   "As used in this chapter, 'corridor route' means any existing or proposed road in an urban or rural area which is classified as part of the 'principal arterial highway system' as defined in the National Highway Functional Classification Studies on record with the Department and which serves traffic corridor movements of substantial statewide or interstate travel and as to which the concept of service to abutting land is subordinate to the provisions of travel service to major traffic movements."

disclosure "through a public location hearing" of the location and route of any proposed future right-of-way and designate the same on a "Future Right-of-Way Map —Tentative" which is to be currently maintained as a public record to which the public shall have access. § 145(e). The Department must then refer the "Tentative" map to the county and municipal governing bodies affected by the proposed route, § 145(f), and afford to any of them so requesting a hearing, which may be a public hearing. § 145(g).

After making any changes or amendments that may be an outgrowth of the referral to local governing bodies, the Department must then designate a "Future Right-of-Way Map—Final" which must also be currently maintained as a public record. § 145(h). Copies of the "Final" map must be provided to the local governments affected. § 145(i). Then come the following two provisions which are at the heart of the present controversy.

"(j) Land so designated under subsection (i) above upon the 'Future Right-of-Way Map—Final' shall thereafter, and so long as it remains upon said map, be set aside for highway purposes, except that the Department may, at its discretion, authorize temporary use of such land for nonhighway purposes which will not interfere with highway planning or construction. Department authorization for temporary use of land shall be required only in those instances in which such use, in the opinion of the Department, would increase the cost to the State in the future procurement of such land for highway purposes. Nothing in this section shall preclude the owner or owners of land set aside for highway purposes in accordance with the provisions of this section from utilizing said land as they may desire prior to procurement by the State, provided such utilization of the land does not increase the potential cost to the State at the future date of negotiations for procurement.

"(k) The adoption of the map referred to under subsection (j) and the inclusion and location thereon of any future highway right-of-way route or lines shall not, in and of itself, constitute and be deemed to constitute the establishment of any highway and acceptance of any land for highway purposes and shall not constitute the taking or application for public use. However, to the extent lands so designated under subsection (j) above may be judicially determined to be taken or applied to public use under the Delaware Constitution, article 1, § 8, the Department may, in the exercise of its power of eminent domain, acquire the same by condemnation and in the manner prescribed in Chapter 61, Title 10, if the Department cannot reach agreement with the owner as to the value thereof."

Included within the same legislative enactment, i. e., 57 Del.L. Ch. 754, was an amendment to 9 Del.C. § 3005 which pertains to the issuance of building permits in New Castle County. This amendment implements the foregoing provisions of the Corridor Route legislation in the following manner. By a new subsection (c) to 9 Del.C. § 3005 it is provided as follows:

"(c) Except in instances in which the State Department of Highways and Transportation or its successor has indicated authorization for temporary use of land set aside for future right-of-way needs, as provided in § 145 of Title 17 [Delaware Code], no building permit shall be issued for the erection of any building, or for the construction of any improvement, or structure on any part of any land which lies or is located within the lines of any land designated and set aside for future highway right-of-way needs as appears on the Department's Future Right-of-Way Map—Final except as hereinafter provided in subsection (d)."

By subparagraph (d) added to § 3005 it is provided as follows:

"(d) A building permit, otherwise issuable except for subsection (c) of this section, shall be issued notwithstanding the provisions of subsection (c) unless the State Department of Highways and Transportation after being given written notice thereof by the Commission shall (1) within 60 days of receipt of such notice, file with the Commission a declaration (i) that the issuance of said permit will be detrimental to future highway planning and construction; and (ii) that the land described in said permit application is needed for future highway purposes; and (2) within 180 days of the giving of such notice, institute condemnation proceedings under Chapter 61 of Title 10, to acquire all of the land described in the building permit application as may be located within the future highway right-of-way."

Identical amendments were made by 57 Del.L. Ch. 754 to corresponding statutes pertaining to Kent and Sussex Counties, but as such they are of no direct concern to the present controversy which only involves land in New Castle County.

To summarize, the interrelation of the foregoing statutory amendments sets up the following situation. Assuming that the procedural requirements are met and a "Future Right-of-Way Map—Final" has come into being and is duly recorded, a "corridor route" is thus established over privately owned lands for future highway use. The owners of the land lying within such corridor route are thus put on notice that such portion of their lands are at least tentatively committed for future highway purposes even though the State is taking no action at that time to acquire title to such land. Indeed 17 Del.C. § 145(k) spe-

cifically provides that inclusion of land within the corridor route does not constitute a taking or any application for public use.

Despite the intent of the legislation not to constitute a taking, however, the fact remains that once the Final Map is recorded, an owner of a land lying within the corridor route thereby incurs an additional limitation on the future utilization of his land. Specifically, before an owner can undertake any construction, improvements, or renovations which would require a building permit from the county, authorization to issue such permit must be obtained by the county from the Highway Department. Such authorization is left to the discretion of the Highway Department. 17 Del.C. § 145(j).

Procedurally, when an owner of land within the corridor route seeks a building permit for construction or improvements thereon, the county must so notify the Highway Department in writing. If the Highway Department gives its approval, or if it does nothing within 180 days, the building permit may be issued. On the other hand, if it has objection to the proposed construction or improvements then the Highway Department must first file with the county within 60 days a declaration "that the issuance of the said permit will be detrimental to future highway planning and construction" and "that the land described in said permit application is needed for future highway purposes." Within 180 days thereafter the Highway Department must institute proceedings under the condemnation statutes to actually acquire the land within the corridor route for which a building permit was sought. 9 Del.C. § 3005(d).

Plaintiffs contend that this legislation is unconstitutional in its effect on the owners of land lying within the corridor route.[3]

---

3. Article I, Section 8 of the Delaware Constitution of 1897 provides, *inter alia*, " . . . nor shall any man's property be taken or applied to public use without the consent of his representatives, and without just compensation being made."

They argue that despite the statutory language, the effect of the establishment of a corridor route is to apply to public use the property lying within the corridor without compensation to the owners. They also argue that the Act is unconstitutional in that it vests powers in the Highway Department without setting standards or guidelines to confine the exercise of those powers within accepted constitutional limitations.

On a more technical premise they point to the fact that the amendments to 9 Del.C. § 3005 pertaining to the building permits actually amended a law controlling the subdivision of land in New Castle County, which itself was not enacted until 1965. Since that law only had prospective effect after 1965, and since Christine Manor, the subdivision in which plaintiffs reside, was in existence prior to that time, they contend that the amendments to 9 Del.C. § 3005 accomplished by 57 Del.L. Ch. 754 can have no application to them and that consequently they cannot be deprived of building permits on the strength of the Corridor Route legislation even though their land may lie within such route.

Finally, plaintiffs assert that even if the Act is constitutional and does apply to their properties, the corridor route through Christine Manor has not been established in accordance with the requirement of 17 Del.C. § 145(e) in that a proper public location hearing was never held. Specifically, they charge that of the two administrative proceedings which were held concerning the corridor route here in issue, one predated the adoption of 57 Del.L. Ch. 754 and the other was simply a meeting of the Highway Advisory Council as to which no public notice was given.

Since in the order stated the last two areas of contention by the plaintiffs come into play only if they are unsuccessful as to the first, I will go directly to the constitutional issue. I also feel that that matter can be determined on this point.

The first order of business is to attempt to ascertain the intent and effect of the legislation as expressed by its terms. And while members of the General Assembly undoubtedly have their own understanding as to what they are doing in passing a law, in recent years the likelihood that others, not privy to the legislative thought process, will be able to perceive it from the statutory language employed has become increasingly remote. As observed by the District Court in *Hill v. Brinegar, supra*, at 371 F. Supp. 1168:

"A study of the Act leaves one with considerable uncertainty about the legislative intent. It puts the matter generously to say the draftsmanship is imperfect. Most disturbing for present purposes is the failure to use consistent terminology in delineating the scope of the authority of the State Highway Department and the standards for the exercise of its discretion. Giving content and meaning to the concept of 'temporary use . . . for non-highway purposes, which will not interfere with highway planning or construction' in the convoluted context of subsection [j], for example, is a difficult task."

While I wholeheartedly agree with this observation of the federal court, the task must nevertheless be undertaken. In so doing several things must be noted.

To begin with, while § 145(k) specifically states that inclusion of land on the Final Map does not constitute a taking or acceptance for a public purpose, § 145(j) as well as 9 Del.C. § 3005(c) continually refer to such lands as being "set aside for highway purposes" or "set aside for future right-of-way needs." The first sentence of § 145(j) provides an exception to this status in that it gives the Highway Department "discretion" to authorize a "temporary use" of included lands for nonhighway purposes so long as such temporary use does not interfere with (presumably future) highway planning or construction. However, a temporary use is not defined.

The second sentence of § 145(j) seems to qualify the term "temporary use" as used in the first sentence by providing that Highway Department authorization is only required as to a temporary use which "in the opinion of the Department" would increase the cost to the State in the event of "future procurement of such land for highway purposes."

The third sentence of § 145(j) seems to introduce a new concept apart from a temporary use by providing that the owners of lands set aside for highway purposes on the Final Map shall not be precluded from "utilizing" their land for any purpose "prior to procurement by the State" provided such "utilization" of the land "does not increase the potential cost to the State at the future date . . . for procurement."

Thus, it would appear under § 145(j) that the owners of land set aside for highway purposes on a Final Map can use their land for any purpose prior to procurement by the State, and without Highway Department authorization, as long as such use does not increase the eventual cost to the State in the event it does later decide to take the land. On the other hand, if any owner desires to make a temporary use of his land, which would not interfere with highway planning or construction but which would increase the future cost of acquisition, he must first obtain the authorization of the Highway Department to do so.

■ However, when 9 Del.C. § 3005(c) is closely examined, it becomes clear that the foregoing is not a complete analysis. There it is provided that except where the Highway Department has authorized a temporary use, no building permit can be issued to the owner of lands set aside for highway purposes on the Final Map for the erection of a building, the construction of any improvement or the erection or construction of any structure unless the county first notifies the Highway Department

and the Department either gives its prior approval (presumably, although that statute does not mention this) or fails to initiate condemnation proceedings to actually take the property within 180 days. Thus, it is apparent that the only utilization of land that can be made by an owner without Highway Department authorization is that which will not increase its future cost of taking to the State and which does not require a county building permit.

■ In summary, two conclusions can be reached as to the intent, purpose and effect of 57 Del.L. Ch. 754. First, it is an attempt to save the State (and thus its taxpayers) money with regard to the acquisition of land for necessary highway expansion. As such this is always a laudable purpose. Second, in order to do so, it endeavors to draw a fine line of distinction by tying up the future use of land and freezing its value for future procurement purposes without actually taking it from and presently compensating the owners. This requires closer scrutiny.

In *State v. 0.62033 Acres of Land in Christiana Hundred*, Del.Super., 10 Terry 174, 110 A.2d 1 (1954), a similar issue was presented. There the Highway Department sought to condemn a certain area of land, part of which was immediately needed but the remainder of which it sought for future widening of the road from two lanes to four. The evidence indicated that this widening would probably become necessary within 30 years but no one could definitely say when. The Department, however, concluded that it would be "economically expedient" to obtain the future right-of-way at that time prior to the appreciation of property values in a growing area. While recognizing this, the Court nevertheless found that a taking of private property for highway expansion at some indefinite future time would not be a taking necessary for a proper public purpose and would invade the rights of the property owner as protected by Article I, § 8 of

the Delaware Constitution. As stated by then Judge Herrmann at 110 A.2d 7:

"A mere contemplation of a road improvement at some indefinite time within the next thirty years is too speculative and too remote to justify the exercise of the power of eminent domain. While long range planning by the State Highway Department is certainly commendable, nevertheless, the rights of private property, which the law guards so zealously, may not be subordinated to the mere *possibility or probability* of a public use at some indefinite, remote time in the future." (Emphasis added.)  ·

The "Corridor Route" legislation, as I view it, attempts to do indirectly what *State v. 0.62033 Acres* forbids to be accomplished directly. It places a limitation on the rights of private property based on the possibility or probability that the property will be needed for a public use at some indefinite future time. The primary difference is that it purports to do so without a taking and without compensation. Rather it merely "sets it aside" for a possible public use subject to certain conditions which otherwise would not apply to its utilization by its owners.

And this is not all. In an obvious effort to provide a safeguard to the validity of the legislation, 17 Del.C. § 145(k) and 9 Del.C. § 3005(d) provide that if a taking is found by a court despite the statutory language to the contrary, or if the Highway Department objects to the issuance of a building permit for the contemplated improvement or construction, then the Department shall proceed with condemnation of that particular segment of the corridor route then and there. Plaintiffs with considerable logic say that this places them on the horns of a dilemma. The price they pay for seeking a building permit to improve their property may not only be denial of the permit but also the immediate loss of the property itself through condemnation. Moreover, once they start the process by merely applying for a building permit the situation is out of their control, and the next word they may receive is notice of condemnation which they, in effect, have initiated without ever intending to do so.

More importantly, as I see it, this intended safeguard of property rights would actually precipitate a violation of *State v. 0.62033 Acres, supra.* The legislation provides that location on the Final Map is not a taking but rather is a setting aside for ' future use and procurement as needed. Thus, the very designation of property on a Final Map pursuant to the Corridor Route statutes is a public acknowledgement that the land so designated is not immediately needed for any public purpose. To then condemn pursuant to 9 Del.C. § 3005(d) rather than to approve a building permit as to any given parcel so that the future cost of procurement would not be increased would be to take land for possible highway usage at an indefinite future time in the name of present economic expediency. This is exactly what *State v. 0.62033 Acres* forbids as an improper purpose of·eminent domain and an invasion of the landowner's rights under Article I, § 7 and § 8 of the Delaware Constitution.

Thus, the question becomes whether or not justification can be found under some other theory. The Highway Department takes the position that there can be no "taking" of property if the property is never actually disturbed. *United States v. Sponenbarger*, 308 U.S. 256, 60 S.Ct. 225, 84 L.Ed. 230 (1939); *Hempstead Warehouse Corporation v. United States*, 98 F. Supp. 572, 120 Ct.Cl. 291 (1951). Reliance is also placed on the well recognized propositions that a mere threat of future condemnation does not warrant compensation, and that all private property is owned subject to the possibility or threat of condemnation. *Bauman v. Ross*, 167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270 (1897); *City of Houston v. Biggers*, Tex.Civ.App., 380 S.W.2d 700 (1964), cert. den. 380 U.S. 962, 85 S.Ct. 1105, 14 L.Ed.2d 153 (1965);

*Hempstead Warehouse Corporation v. United States, supra.* The Department further relies on cases which have held that the adoption by ordinance of a master street plan accompanied by set back restrictions which prohibit construction within the line of future street expansion is a proper exercise of the police power of a state and, as such is constitutional even though it does place a limitation on the future use of property lying within the area of possible future streets. *Symonds v. Bucklin,* D.Md., 197 F.Supp. 682 (1961); *Rochester Business Institute v. City of Rochester,* 25 A.D.2d 97, 267 N.Y.S.2d 274 (1966); *State v. Houghton,* 171 Minn. 231, 213 N.W. 907 (1927). Compare also *Euclid v. Ambler Realty Company,* 272 U. S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), (as to a zoning plan prohibiting industrial uses); *East Rutherford Industrial Park, Inc. v. State,* 119 N.J.Super. 352, 291 A.2d 588 (1972) (as to an ordinance creating a sports and exposition center.)

Based on the foregoing rationale it is argued that the Corridor Route statutes here do no more than to permit the designation of an area of future highway expansion subject to condemnation at a future time and with no present interference to the use of the property by its owners other than the regulation of construction and improvements on it. And this is said to be a proper exercise of the police power in the public interest so as to provide for the orderly development and expansion of necessary public highways. As such, the Department argues, the Corridor Route statutes create at best a threat of future condemnation at some indefinite time, which is not a taking and which is not presently compensable, and which, therefore, does not violate the previously mentioned Constitutional provisions.

In my opinion, however, this approach and the line of cases which are offered to support it are distinguishable when consideration is given to the intent and effect of the Corridor Route statutes as previously

determined. In *Bauman v. Ross,* for instance, there was only the recording of a street and subdivision map, and the court noted that since there was no restriction whatever placed on the right to use or improve the lands by its owners prior to the commencement of condemnation proceedings, there was no taking. In *City of Houston v. Biggers,* a certain amount of repairs were permitted to the designated property in any calendar year prior to actual condemnation. In *Symonds v. Bucklin* and *Rochester Business Institute v. City of Rochester,* even though building permits were denied for future right-of-way areas, a procedure was provided for an owner to test the propriety of a denial based on the facts of a given situation. In fact both of these cases make a point of the necessity for a balancing of the public interest against the diminution of property values in individual cases even where the property lies within future right-of-way lines.

■ Moreover, the majority of the cases relied upon by the Department deal with situations involving zoning ordinances, which is not the case here. However, even if the zoning rationale is applicable, it too has limitations. As stated in *Symonds v. Bucklin, supra,* at 197 F.Supp. 685.

> "Zoning cannot be used as a substitute for eminent domain proceedings to defeat the payment of just compensation by depressing [property] values and so reducing the amount of damages to be paid when private property is to be taken for public use."

To the same effect, see *Rochester Business Institute v. City of Rochester, supra.*

The Corridor Route legislation, as I view it, not only has this unacceptable regulation of property values as its primary purpose, it goes even further by virtue of the ax it hands the State to hold over the head of selected property owners. While it is undoubtedly an administrative planning act, it is also one which contemplates condemnation. The flaw in its overall ad-

ministrative goal is that portion of it which would enable the State to lawfully accelerate the taking of presently unneeded property as a virtual punishment to a private owner who dared to improve his land or use it in any manner which would increase its value.

The Highway Department suggests that if any owner applies for a building permit and later is advised or senses that the Department object to it, he may avoid the condemnation mandated by 9 Del.C. 3005(d) by the simple expediency of withdrawing his application. In such a case, it is suggested, the Department would surely accede to the withdrawal of the application rather than to insist on eminent domain proceedings. However, the statute makes no allowance for this. It simply provides that if the Highway Department does not commence eminent domain proceedings within 180 days, the applicant is entitled to his building permit. Thus, if the owner is to be allowed to voluntarily withdraw from his dilemma, it is a decision which again would be left to the discretion of the Department. When subjected to constitutional attack it seems to me that legislation must be judged by what it authorizes rather than to depend upon a merciful and beneficent administration by those who are given the authority.

In summary, I am not persuaded by the Department's arguments. The Corridor Route legislation attempts to "set aside" private property for future use without actually taking it. It attempts to enforce this status by providing a method whereby the State can condemn immediately, if it so desires, if the owner attempts to do anything which would increase the future value of the land over that which existed when it was set aside. This plan can only work, however, if it is constitutionally proper to condemn in advance for possible future needs so as to minimize the eventual cost of procurement to the State. *State v. 0.62033 Acres, supra,* has already held that it is not.

Thus, I am of the opinion that 17 Del.C. § 145(j) and § 145(k) and 9 Del.C. § 3005(c) and § 3005(d), insofar as they purport to grant to the Highway Department unrestricted discretion to forthwith take and condemn private property whenever it concludes that the use to which the owner intends to put it would increase the eventual acquisition cost to the State when and if the State should ever need it for highway purposes, constitutes an improper exercise of the power of eminent domain in contravention of the rights to property guaranteed to private citizens by Article I, § 7 and § 8 of the Delaware Constitution. Since the remaining subsections of 17 Del. C. § 145 deal only with the establishment of the location for a corridor route and, as such, imposes no restriction on the use of property lying therein, there would appear to be no question as to their validity.

In view of this conclusion, it becomes unnecessary to consider the remaining contentions of the plaintiffs concerning the propriety of adding the amendatory language to 9 Del.C. Ch. 30 and the sufficiency of the alleged public location hearing. Counsel for plaintiffs are directed to submit a form of order, on notice.