OPINION OF THE COURT
Michael V. Ajello, J.
*1096 Plaintiffs brought this action for a declaratory judgment seeking to declare void so much of an official street map of the City of New York as affects their property in Richmond County or, in the alternative, the defendant City of New York be made to compensate them for the value of their property. The complaint alleged that the City adopted a map widening Amboy Road, and the widening line cuts through the property as well as the house situated thereon, so that the widening now encompasses nearly 50% of their house. It was further alleged that plaintiffs need to sell the property because of financial need and that the mapping restrictions have made their property virtually unsaleable and totally valueless.
At the trial, plaintiffs produced several witnesses. One of the witnesses, Patrick Giallorenzo, a surveyor, testified merely to identify a survey of the property made by him on September 15, 2006 so that it could be admitted in evidence. The survey shows the property to be an irregular shape located on the corner of Amboy Road and Buffalo Street, having a gross area of 5,042 square feet, with 2,185 square feet lying in the bed of the widened street and a remaining area of 2,856 square feet. Although the house has an Amboy Road address, a title report which was admitted in evidence disclosed that the front of the house is on Buffalo Street. The widening line also intersects the house, which has a wood deck on the side. The survey shows an aboveground pool in the rear and that an open porch and steps encroach onto Buffalo Street.
John Najamy, a builder, testified that without the widening line two houses could be built on the property. With the line, only one house could be built. He, personally, would not buy the lot with the widening line on it. The witness further testified that the property is zoned R-3-1 and that without the line, the property could be subdivided into two lots, with each one having a value of $200,000 to $250,000. He stated that the lot does have value with the widening line going through it, but the value would be substantially less than without the line. However, he did not know what that value would be.
Michael Landolfa, a real estate broker associated with Cold-well Banker Village Realty, testified that he saw the survey and he would not list the property because in his estimation it would not be saleable. He could not sell it to a builder with the widening line and if attempted to be sold as a house, a buyer would likely turn it down. If a prospective buyer did not turn it down, his attorney would tell him to turn it down. It would be a waste *1097 of time to list it. The witness admitted that he had never listed the property or tried to sell it. No testimony was offered that he was ever asked to list or sell the property.
The next witness was Spencer Gaines, the brother and former partner of plaintiffs’ attorney. His practice is mainly in the area of real estate. He is also a title agent and has represented many banks. He testified that he would strongly urge a prospective purchaser not to buy the property because the widening line creates problems when you buy the property and when you sell it. He was never personally involved with the property.
Robert Fishier, an attorney and partner of Spencer Gaines, testified that his practice is also mainly in the area of real estate. He has represented builders and banks and is also an agent for a title company. He would advise a prospective purchaser not to buy the property because he would have a difficult time selling it. He would also advise a lending institution not to lend any money on the property and it has been his experience that a lending institution would not allow him to close a loan where there is a widening line going through the structure on the property. If a builder came to him, he would tell him to consult with an engineer or architect to make the final determination. He also was never involved in any attempt to sell the house.
Plaintiffs both testified on their own behalf. Linda Royal testified that she spoke to many builders and realtors concerning the sale of her house and showed them the survey. However, she was not permitted to testify as to what they said to her. She admitted that she never advertised the house for sale in any newspaper, never put a for sale sign in front of her house and never listed the house with a broker.
James Royal testified that he wants to sell his house because he cannot afford it. He also admitted that he never placed an advertisement in a newspaper or placed a sign in front of the house. He also never entered into an agreement with a broker to try to sell the property.
A motion for judgment pursuant to CPLR 4401 was made at the close of plaintiffs’ evidence by the City of New York. It argued that plaintiffs had failed to prove that the widening line had removed all economic value or all but a bare residual of value from the property and that the evidence showed that plaintiffs had not done anything to sell their property. It also pointed out that plaintiffs were able to purchase the property and none of the experts called by plaintiffs could explain how plaintiffs received a mortgage as well as title insurance.
*1098 Decision was reserved on the motion. Defendant presented no witnesses on its behalf.
The State (here, the City) has the power to temporarily restrict use of land without compensation for the purpose of conducting studies toward a comprehensive regulatory scheme, but the duration of such a period cannot be unreasonable (Matter of Ward v Bennett, 214 AD2d 741 [1995]; Matter of Russo v New York State Dept. of Envtl. Conservation, 55 AD2d 935 [1977]).
If the impact of a planning map produces such substantial damage as to render the property useless for any reasonable purpose, there has been an unconstitutional taking of the property (Rochester Bus. Inst. v City of Rochester, 25 AD2d 97 [1966]). However, it must be shown that the economic value or all but a bare residual of its value has been destroyed (Spears v Berle, 48 NY2d 254 [1979]; Fred F. French Inv. Co. v City of New York, 39 NY2d 587 [1976]); and one who challenges a land use regulation sustains a heavy burden of proof and should produce “dollars and cents” evidence that no reasonable return can be had on the property (Spears v Berle, supra at 263; Briarcliff Assoc. v Town of Cortlandt, 272 AD2d 488 [2000]).
The street widening map herein involved was adopted in 1918. In 1926, General City Law § 35 was enacted prohibiting the issuance of a permit for building in the bed of any street or highway shown or laid out on any official map or plan. It provides for exceptions where land within such mapped street or highway is not yielding a fair return. It further provides that where a proposed street widening or extension has been shown on an official map or plan for 10 years or more and the city has not acquired title thereto, the city may grant a permit for building in such street. The structure on plaintiffs’ property was built in 1925, prior to the enactment of General City Law § 35. Therefore, it was not in violation of section 35 when it was erected in the bed of the widened street, but no construction may presently be done in the bed of the widened street without first obtaining a permit. However, inasmuch as plaintiffs’ claim is that they only seek to sell and not build, it is not necessary for them to have applied for a permit in order to maintain this action (Jensen v City of New York, 42 NY2d 1079 [1977]). Nor is it necessary that they exhaust all possible remedies and it is also irrelevant that they may have purchased the property with knowledge of the widening line overlapping close to 45% of their property (Matter of Ward v Bennett, 79 NY2d 394 [1992]).
*1099 I find the City’s argument that the fact that plaintiffs purchased the property and were able to obtain a mortgage as well as a title policy establishes that the property is saleable unconvincing. As Mr. Justice Mega pointed out in denying defendant’s cross motion to dismiss the complaint, the real estate market may have changed substantially since the time of plaintiffs’ purchase in 1984. Moreover, it was pointed out that the City had not submitted any evidence of the recent sale of any similarly encumbered parcel or the ability of a prospective purchaser to qualify for a mortgage. There was also no such evidence produced at the trial. As to the title insurance which plaintiffs obtained, an examination thereof establishes that the policy excepted from coverage the encumbrance created by the widening line. These claims, therefore, do not provide a basis for dismissing the complaint.
Plaintiffs, on the other hand, claim that the facts in the case at bar are identical to those in Jensen v City of New York (supra). I find, however, that the case before this court is clearly distinguishable. In Jensen, an elderly widow sought to sell her property which had two structures on it, or borrow money to make badly needed repairs. She was unable to do so because of mapping restrictions. The City had adopted a substantial widening of Woodrow Road and a new street designated as Anaconda Street. As a result, both of the structures and 78% of the property lay within the bed of these streets. At the trial, an appraiser testified as to the value with and without the encumbrance and there was also testimony establishing that she could not sell the property. In the present case there was no testimony as to value from any appraiser, but only from a builder, who could not state a value for the property with the widening line going through it.
Furthermore, I find that there was no proof submitted of any attempt by plaintiffs to sell their property. None of the witnesses called by plaintiffs had any connection with any attempted sale of the property. No broker testified that he was requested to list the property but refused to do so because of the widening line, nor was there any testimony to the effect that plaintiffs attempted to list the property with brokers but the brokers refused to take the listing. Plaintiffs also testified that they never advertised the property for sale and never placed a sign on the property.
In the absence of any proof of the diminution in value resulting from the proposed widening, as well as the absence of any *1100 proof that plaintiffs attempted to sell their property but were unable to do so because of the widening line going through their property, I find that plaintiffs have failed to make out a prima facie case and defendant’s motion to dismiss pursuant to CPLR 4401 made at the conclusion of plaintiffs’ evidence must be granted. However, in view of the fact that the proof lacking in this case may be available to plaintiffs, the dismissal should be without prejudice (see CPLR 5013).
Accordingly, it is ordered and adjudged that defendant’s motion to dismiss pursuant to CPLR 4401 is granted and the complaint is dismissed without prejudice to the commencement of another action.